UNITED STATES of America and James Oys, an Officer of the Internal Revenue Service, Petitioners,

v.

BRIGHAM YOUNG UNIVERSITY and Dallin H. Oaks, President of Brigham Young University, Respondents.

Civ. No. C–79–0753.

United States District Court, D. Utah, C. D.

March 11, 1980.

Ronald L. Rencher, U. S. Atty., for the District of Utah, Salt Lake City, Utah, Robert S. Horwitz, Tax Div., Dept. of Justice, Washington, D. C., for petitioners.

H. Hal Visick, Provo, Utah, for respondents.

WINDER, District Judge.

On November 5, 1979, the government filed a petition for leave to serve a third party John Doe summons in File No. C–79–0647. Thereafter, this court signed an order allowing the IRS to serve a John Doe summons upon Brigham Young University (BYU), in the matter of the tax liability of donors of charitable contributions in kind, excluding securities, to BYU during the years 1976, 1977, and 1978. The summons was served on BYU, who refused to produce the information requested. On December 21, 1979, the government filed a petition to enforce the IRS summons, File No. C–79–0753.

The matter was referred to the magistrate, pursuant to 28 U.S.C. § 636(b)(3), with directions to conduct such hearings as necessary. An order to show cause why the respondents (BYU) should not be compelled to obey the IRS summons was also issued. A hearing was held before the magistrate, after which and on February 5, 1980, the magistrate filed his Report and Recommendation. He recommended that this court order BYU to comply with the summons to produce the requested information. BYU has objected to the magistrate's report and the government has filed its response to BYU's objections. The matter is now before this court for the purpose of determining whether the magistrate's report should be adopted or rejected.

The pertinent facts are not seriously in dispute. BYU is a private institution of higher education located in Provo, Utah. As such, it is exempt from income taxation under 26 U.S.C. § 501(c)(3). Under § 170,

gifts to BYU are charitable contributions that are deductible from the donor's income. A taxpayer who makes a charitable contribution in kind to BYU may deduct from income in the year of the gift the fair market value of the property contributed as of the time of the contribution, subject to the limitations set forth in § 170.

The IRS has audited some 162 federal income tax returns of persons who made charitable contributions in kind to BYU. Eighty-five of these returns were for taxable years ending before January 1, 1976. The remainder were for taxable years ending after December 31, 1975. The IRS has proposed deficiencies for all the returns for years ending before January 1, 1976, and has proposed or expects to propose deficiencies for all the returns for the years ending after December 31, 1975. The proposed deficiency in each case results from a determination by the IRS that the actual fair market value of the property contributed is substantially less than the amount claimed on the return. Because of these overvaluations, the IRS has commenced an investigation of the correct tax liability of all persons who made gifts in kind, excluding securities, to BYU during the years 1976, 1977, and 1978. By these proceedings it is seeking to obtain from BYU the names and addresses of all such donors. BYU has acknowledged their number totals approximately 300.

Of the overvaluations which the IRS has determined so far, all but fourteen deal with one group of donors of art objects and another group of donors of silver mining claims. BYU has offered to provide the IRS with the names and addresses of the individuals in these two groups. The members of each of these groups had certain common characteristics. The donors of the art objects participated in a transaction devised by an art dealer or dealers, part of which involved the dealer or dealers appraising the art objects for purposes of valuation. Similarly with the silver mining claims, one mining engineer had appraised all of the mining claims of that group of donors. There was no such common characteristic relating to the fourteen other do-

nors investigated by the IRS and not within the art objects or silver mining claim groups. So far as the record discloses, these fourteen donors made their overvalued gifts under circumstances where no relationship has been demonstrated between their gifts and that of any other gift in this group except, of course, that all made a gift in kind to BYU.

Both parties agree that the requirements of 26 U.S.C. § 7609(f) govern the result in this case. That section states:

> Additional requirement in the case of a John Doe summons.—Any summons described in subsection (c) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that—
>
> (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
>
> (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
>
> (3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

BYU argues that there is no ongoing investigation and that the requirements of subsection (1) of § 7609(f) have not been met by the IRS. It is clear from the record, however, that the summons does relate to an investigation of a class of persons within the meaning of § 7609(f)(1). Likewise, the court rejects BYU's objection that because the IRS already has technical possession of the records it seeks it therefore has not met the requirements of subsection (3). Several recent cases have held that the mere technical possession of records by the IRS where there is no method of practical retrieval does not defeat the subsection (3) requirement of § 7609(f). *United States v. First National State Bank*, 616 F.2d 668 (3d Cir.

1980); *United States v. Reprints, Inc.*, 79–1 U.S.T.C. ¶ 9108 (N.D. Ga. 1978). See also *United States v. Berkowitz*, 488 F.2d 1235 (3d Cir. 1973); *United States v. Theodore*, 479 F.2d 749 (4th Cir. 1973). It would be most impractical and also unnecessary, under this subsection, to require the IRS to manually search through thousands or hundreds of thousands of tax returns for the three years in question to determine the identity of each donor in kind to BYU. That this would have to be done satisfies the court that such information is "not readily available."

■ Before discussing the requirements of subsection (2) of § 7609(f) there are two other issues that can be briefly resolved. Both the IRS and BYU agree that BYU is not a third-party recordkeeper pursuant to § 7609(a)(3). BYU argues that a John Doe summons may only be issued to third-party recordkeepers as enumerated in § 7609(a)(3). It appears clear from the language of § 7609 and the legislative history that such an interpretation is not correct. It also appears that the only court to rule on the issue did not restrict the issuance of John Doe summons to only the third parties enumerated in § 7609(a)(3). *United States v. Reprints, Inc., supra.* This court holds therefore that this summons would be properly issuable to BYU under these circumstances if the other requirements of § 7609(f) were met.

■ BYU's claim that the information demanded by the IRS may interfere with the donors' freedom of association under the First Amendment is also without merit. *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) and *United States v. Citizens State Bank*, 612 F.2d 1091 (8th Cir. 1980) do not compel this court to refuse enforcement of the summons and the information requested. Even assuming that the IRS received the information on the donors and the flow of gifts in kind to BYU was thereafter reduced, there would still not be a violation of the associational rights of donors to BYU under the authority of these two cases.

■ Finally, and before reaching the determinative issue, there is one further point to consider. The government contends that BYU should not be allowed to challenge enforcement of the summons on the ground that the petitioners have failed to meet the requirements of § 7609(f). The rationale for this argument is that the court has already issued an order for leave to serve the summons and any attempt by BYU to challenge that order would be an attempt to relitigate a prior determination of the court. The court finds no merit to that contention. The order authorizing the summons was signed ex parte based on the petition and motion of the government and the affidavit of a representative of the IRS. It would be inappropriate to rule that because the court had signed an ex parte order, it should now refuse to consider in a contested proceeding the claim of a party that the requirements of the applicable statute were not fulfilled. This is particularly so where this court has heretofore had served upon BYU an order to show cause directing it to appear and show cause why it "should not be compelled to obey" the IRS summons. That is exactly what BYU is now attempting to show and it should be permitted to do so if it has a legitimate basis.

The critical issue thus becomes whether there is a reasonable basis for believing that the individuals in the unaudited class of donors in kind to BYU have overvalued their donations. BYU has objected to the statement in the magistrate's report that "[t]here is logic in saying that, because all known members of a group have overvalued, one or more of the unknown members of the group might likewise have overvalued." BYU argues that the 148 donors in the art object and silver mining groups, whose identity it has offered to furnish, must be distinguished from the other fourteen individuals whom the IRS has found to have overvalued. It further argues that there is no rational basis for concluding that because these fourteen did overvalue their gifts that other donors in kind to BYU have overvalued theirs.

■ The government argues that since every one of the returns of the 162 BYU donors in kind audited to date has shown overvaluation, there exists unusual or suspicious circumstances which create a likelihood that the other donors in kind to BYU have overvalued their donations. It points out, and correctly so, that the standard required to invoke the "reasonable basis for believing" requirement of § 7609(f)(2) is not mathematical certainty. What is required is some logical basis for believing that because some members of the class have been shown to have violated the revenue laws, there is reasonable likelihood others may have done so.

■ So far as it appears from the record, the only argument of the IRS in support of satisfying § 7609(f)(2) is that because every donor in kind to BYU who has been investigated to date has been found to have overvalued his or her gift, that this suggests or should make one suspicious that there has been overvaluation by other donors in kind. Implicit in this argument is that there is some characteristic common to donors in kind to BYU that causes them to overvalue their donations. The court rejects this contention and holds that there is no reasonable basis to believe that one or more BYU donors have overvalued their gifts simply because one or more other donors have overvalued theirs.

The court also rejects the notion that as the number of donors shown to have overvalued their gifts increases, there is a greater likelihood other donors (acting independently and with no unique or common characteristic) have overvalued their gifts.

There has been no showing that BYU donors have a uniform characteristic or that BYU exercises any influence over its donors to cause them to overvalue their donations. Unless this court is to conclude there is something inherently suspicious or unique about donors in kind to BYU, it is as logical to believe, based on the showing the IRS has made in this case, that donors in kind to other private universities or, for that matter, donors in kind to any charity, have overvalued their gifts as that the unaudited donors to BYU have overvalued theirs.

The cases relied upon by the IRS do not compel a different result. Those cases include *United States v. Carter,* 489 F.2d 413 (5th Cir. 1973); *United States v. Turner,* 480 F.2d 272 (7th Cir. 1973); *United States v. Theodore,* 479 F.2d 749 (4th Cir. 1973). Each of these cases involved the Tax Preparer's Project of the IRS in which undercover IRS agents would take a sample return to be prepared and then summons the records of the tax preparer if the return was wrongfully prepared. Either by direct holding or by the reasoning of these three cases, the IRS was allowed to obtain the names of all persons for whom the respondent had prepared tax returns when the respondent incorrectly prepared the IRS agent's tax return. Certainly there is some logic in believing that if a tax preparer prepared one return wrongfully he may have done so with other returns. However, that reasoning is not applicable to the present case.

The government also relies on the legislative history of § 7609 and particularly *United States v. Bisceglia,* 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975), for the proposition that if there exists unusual or possibly suspicious circumstances it is proper for the IRS to use a John Doe summons. The court agrees with that proposition, but does not agree this case presents facts "so suggestive of possible tax liability that the Service would be remiss in its duty of collection and enforcement of the Internal Revenue laws if it did not investigate." H.R. Rep. No. 94–658, 94th Cong., 2d Sess. 311, *reprinted in* [1976] U.S. Code Cong. & Admin. News, pp. 2897, 3207. To say that unrelated, independent donors to BYU present a suspicious circumstance, with nothing more, goes against the clear legislative history of § 7609 and the holding and facts of *Bisceglia.*

Under our voluntary tax reporting system where each citizen must pay his or her fair share of the tax, the court recognizes that in order to insure compliance, the IRS must be given the broadest latitude to investigate possible irregularities in the re-

porting of income and deductions. Nevertheless, and as applied to the statute in question here, this does not mean the IRS may require a third party to furnish the names and addresses of all members of a class simply because the investigation of some members of that class has disclosed irregularities on their returns. In order to satisfy the requirements of § 7609(f) in this case, it is not enough to state that because the BYU donors investigated to date have overvalued their gifts, there is a reasonable basis to believe that all such donors have overvalued their gifts.

Accordingly, the court holds that the requirements of § 7609(f)(2) have not been satisfied in this case and therefore the respondents are not required to comply with the summons.