**In the Matter of OIL AND GAS PRODUCERS HAVING PROCESSING AGREEMENTS WITH KERR–McGEE CORPORATION.**

**No. CIV–80–897–T.**

United States District Court,
W. D. Oklahoma.

Aug. 15, 1980.

Roger W. Griffith, Asst. U.S. Atty., Oklahoma City, Okl., for plaintiff.

### ORDER

RALPH G. THOMPSON, District Judge.

The government brings this *ex parte* proceeding pursuant to 26 U.S.C. §§ 7402(a),

7609(f) and 7609(h). The specific remedy sought by the government is an order permitting service of a John Doe summons upon Kerr–McGee Corporation. By a separate motion filed herein, the government also seeks to have these proceedings sealed from public view.

### The John Doe Summons Issue

26 U.S.C. § 7609 is the statute that authorizes the Internal Revenue Service (IRS) to acquire a taxpayer's records from someone other than the taxpayer. Whenever a summons is issued to such a third–party recordkeeper, the provisions of the statute allow the taxpayer an opportunity to intervene and assert any legal objections to the IRS's acquisition of his or her records that the third–party recordkeeper may have. There is, however, an exception to this important protection. The exception is that when the identity of the taxpayer is not known and is thus not revealed in the summons the IRS proposes to serve, the IRS must petition the Court for issuance of a "John Doe" summons, which does not name the taxpayers to whom records sought from the third–party recordkeeper apply. The Court is required to determine the merits of such a petition for a summons on the basis of an *ex parte* hearing only. In such *ex parte* cases, the burden is upon the IRS to establish:

"(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources." 26 U.S.C. § 7609(f).

The government has commenced this proceeding for the purpose of serving upon Kerr–McGee Corporation a John Doe summons whereby Kerr–McGee would be required to produce the following:

"1. Original copies of any and all processing agreements between Kerr–McGee Corporation and any other party concerning the processing of crude oil and/or natural gas, or any other raw petroleum products, at Kerr–McGee's Lisbon, Louisiana facility, for the calendar years 1977 and 1978. The processing agreements will include, but are not limited to, all such agreements whether written or oral, whereby Kerr–McGee processed the product of another party in return for a percentage of the product so produced and/or for a specified monetary amount, or any other arrangement, as payment for such processing services.

2. Names and addresses of all parties with whom Kerr–McGee Corporation had processing agreements, during the calendar years 1977 and 1978, as referred to above.

3. Original settlement sheets showing the volume of raw products input into the processing stream from each party with whom Kerr–McGee had a processing agreement during the calendar years 1977 and 1978, the gross volume and description by name of each product derived from such input and the volume of output by product which was delivered to such party, or sold for the account of such party, for each calendar month of 1977 and 1978. If Kerr–McGee retained a percentage of the products as processed as its processing fee, what product was retained and the volume of each product for each month. The information sought in this paragraph is sought only for processing done at Kerr–McGee's Lisbon, Louisiana facility."

As is indicated by numbered paragraph 9 of the government's petition, the ascertainable class of persons to which the summons relates is "all persons having oil and gasoline processing agreements with Kerr–McGee under which Kerr–McGee processes raw petroleum products into finished products which are subject to tax." Thus, the IRS has satisfactorily established the first criteria under the statute that the summons

relates to the investigation of an ascertainable group or class of persons.

Additionally, the government makes an arguable case that the information sought, and the identities of the persons with respect to whom the summons is proposed to issue, is not readily available from other sources. In this regard, the government notes that there are a large number of oil and gas producers (over 150 in the Shreveport, Louisiana, telephone directory alone), and the only alternative source for the information would be to identify and audit virtually every oil and gas producer. It should be noted that the government recognizes that the information sought is available from other sources. However, the information is far more centrally located in the hands of Kerr–McGee and is therefore more readily available from Kerr–McGee than through individual audits.

The troublesome question is whether the government has shown there is a reasonable basis for believing that persons who have processing agreements with Kerr–McGee may fail or may have failed to comply with any provision of the internal revenue statutes. The government contends that a large number of Louisiana oil producers having processing agreements similar to those sought from Kerr–McGee have sold, or may have sold, finished gasoline without paying the gasoline excise tax and without registering as a buyer or seller of tax–free gasoline. In support of this contention, the government asserts that, as of April 30, 1980, there were only 83 registrations to sell gasoline tax–free in the State of Louisiana and that only a few of these (as the government puts it, "a small percentage") are oil producers. Additionally, the government asserts that only 161 taxpayers in Louisiana filed tax returns which reported the tax on gasoline.

The issue presented here is whether the IRS is seeking to utilize the John Doe summons procedure to conduct a fishing expedition by intruding excessively into the private affairs of both the taxpayer and the third–party recordkeeper. The purpose to which the IRS intends to put the information acquired through the John Doe summons is explained in numbered paragraph 8 of the petition as follows:

"Once the name, addresses and identities of oil and gasoline producers are learned, their tax returns for the applicable years will be requested from the applicable Internal Revenue Service Centers, and those returns will be examined, as warranted. If they have not filed such returns, an examination to determine their excise tax liabilities, if any, will be initiated as necessary."

From this statement of purpose it is apparent that the IRS is seeking to discover the identity of any oil and gas producer doing business with Kerr–McGee's Lisbon, Louisiana, facility, for the purpose of then determining whether to audit certain of those individuals. The IRS is asking this Court for permission to compel records from which the IRS would *then* be able to determine whether there is a reasonable basis for believing that any identifiable individual may have failed to comply with any internal revenue law.

The purpose for which Congress authorized the John Doe summons procedures here involved are clearly discernible from the legislative history of the statute:

"While the committee believes it is important to preserve the John Doe summons as an investigative tool which may be used in appropriate circumstances, at the same time, the committee does not intend that the John Doe summons is to be available for purposes of enabling the Service to engage in a possible 'fishing expedition.' For this reason, the committee intends that when the Service does seek court authorization to serve John Doe summons, it will have specific facts concerning a specific situation to present to the court.

On the other hand, the committee does not intend to impose an undue burden on the Service in connection with obtaining a court authorization to serve this type of summons. For example, the Service is not required to show that there is 'probable cause' (within the meaning of the

criminal laws relating to the issuance of a search warrant) to believe that a criminal act has occurred, or even that civil fraud has occurred, or might be involved. It is enough for the Service to reveal to the court evidence that a transaction has occurred, or may have occurred, and that the transaction (in the context of such facts as may be known to the Service at that time) is of such a nature as to be reasonably suggestive of the possibility that the correct tax liability with respect to that transaction may not have been reported (or might not be reported in the case of a current year transaction, with respect to which a return is not yet due)." S.Rep.No. 94–938, 94th Cong., 2nd Sess. at 373, *reprinted* in [1976] U.S.Code Cong. & Ad.News, pp. 3439 at 3802.

For nearly identical language from the House, see, H.R.Rep.No. 94–658, 94th Cong., 2nd Sess. at 311, *reprinted in* [1976] U.S. Code Cong. & Ad.News, pp. 2897 at 3207–3208.

■ The transactions which the IRS alleges have occurred are the processing of crude oil and natural gas by Kerr–McGee. The IRS does not allege that a tax is due as a result of this transaction. The IRS has only asserted that some of the producers doing business with Kerr–McGee may have conducted *additional* transactions with the gasoline to which a tax liability may have attached. The IRS has not stated any facts tending to show that those persons who do business with Kerr–McGee may be engaged in some activity in violation of the internal revenue laws. These allegations are not sufficient to justify the extraordinary relief the IRS seeks.

The John Doe summons procedures contained in 26 U.S.C. § 7609(f) were intended as a statutory codification of the Supreme Court's decision in *United States v. Bisceglia*, 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975). There the John Doe summons was issued to discover the identity of an unknown individual who had deposited in a bank $40,000 in badly deteriorated $100 bills. In concluding that the John Doe procedure was proper, the Court recognized that the very nature of the transaction under investigation was such that there was reason to inquire whether taxes due had been reported.

In the case *sub judice*, the IRS has not shown that the ordinary business transactions it seeks to become informed of suggest any grounds to believe that taxes have not been paid. While the information acquired through the John Doe summons will expedite an investigation of those persons whose records are obtained through the summons, there is no reason to believe that those persons who do business with Kerr–McGee are engaged in tax avoidance schemes. The statutory codification of the John Doe summons procedure did not authorize the IRS to force private citizens to do its research. *See, United States v. Humble Oil & Refining Company,* 518 F.2d 747 (5th Cir. 1975).

As the Court views the request before it, the relief sought by the IRS is not based upon a reasonable basis for believing that those oil and gas producers who do business with Kerr–McGee's Lisbon, Louisiana facilities are failing to comply with any provision of the internal revenue laws. Rather, the IRS is seeking to use the John Doe summons procedure as a discovery device for determining whether there is a reasonable basis for believing that some of those oil and gas producers may be so occupied. The IRS has thus put the cart before the horse and, consequently, the requested John Doe summons is fatally overbroad. Both the Constitution, and the Congress in this statutory procedure, have placed the federal courts between the government and the person summoned to protect against the abusive use of governmental powers. *United States v. Bisceglia*, supra. This Court must not cavalierly accede to governmental requests but is required to conscientiously discharge its duty to protect the citizenry from an abusive exercise of governmental powers. By seeking the identities of contracting parties and the details of their business agreements with Kerr–McGee, without their opportunity to object to it, the government asks the Court to permit an

extensive intrusion into the private affairs of individuals and businesses, many of whom, the government appears to concede, have committed no action giving rise to a suspicion of tax avoidance. The request is excessive and, accordingly, it is the opinion of this Court that this John Doe summons constitutes an impermissible "fishing expedition" and it should not, and shall not, issue.

### The Secrecy Issue

 There remains for consideration the question of whether these proceedings should be conducted in secret as requested by the IRS in its motion to have these proceedings sealed. The IRS concludes that it is essential that the file of this action be sealed in order to insure that no other persons have notice of this action. No other justification for secrecy is offered. It may be that the government has misperceived Congress' reason for providing that these proceedings be conducted *ex parte*. The reason is not because the taxpayer, the third-party recordkeeper and the public at large are not entitled to learn of the government's intention to seek certain information. It is because Congress recognized as a practical matter that when the IRS is unable to identify the person or class of persons about whom it seeks certain information, it is obviously not possible to give notice of such proceedings. Therefore, instead, Congress provided that permission to serve the John Doe summons should be sought from the district court, as outlined above. Since there are no identifiable persons known to either the government or the Court who can adequately assert the taxpayer's legal position, the proceedings are conducted *ex parte* without notice of the proceedings being given to anyone. To a large extent, Congress itself has asserted the legal position of the unknown taxpayer by expressly stating what the government must show in order to succeed in its request. There is a big difference between an *ex parte* hearing and a secret one. There is nothing in either the statute itself or the legislative history of this act to indicate that Congress intended these proceed-ings to be conducted in secret. *See*, H.R. Rep.No. 94–658, 94th Cong., 2nd Sess. 306–312, *reprinted in* [1976] U.S.Code Cong. & Ad.News, 2897 at 3202–3208; S.Rep.No. 94–938, 94th Cong., 2nd Sess. 367374, *reprinted in* [1976] U.S.Code Cong. & Ad.News, 3439 at 3796–3803. The fact that the identity of an individual is unknown does not provide any justification that proceedings affecting that individual should be conducted beyond the scrutiny of the public eye. The motion to seal these proceedings is without merit, against public policy and should be denied.

In summary, the approval of this Court for issuance of the proposed John Doe summons is hereby denied. The motion to seal these proceedings is also denied.

It is so ordered.