**UNITED STATES of America and Gerald R. Potocnak, Revenue Agent, Internal Revenue Service**

v.

**PITTSBURGH TRADE EXCHANGE INC. and Vincent E. Manella, Appellants.**

**No. 80–2484.**

United States Court of Appeals, Third Circuit.

Argued Jan. 23, 1981.

Decided March 27, 1981.

As Amended April 6, 1981.

---

M. Carr Ferguson, Asst. Atty. Gen., Michael L. Paup, Charles E. Brookhart (argued), William A. Whitledge, Attys., Tax Division, Dept. of Justice, Washington, D. C., for appellees; Robert J. Cindrich, U. S. Atty., Pittsburgh, Pa., of counsel.

John M. Bray, David J. Curtin (argued), Attys., Schwalb, Donnenfeld, Bray & Silbert, A Professional Corp., Washington, D. C., for appellants; William Greenberg, Pittsburgh, Pa., of counsel.

Before GIBBONS and VAN DUSEN, Circuit Judges, and ACKERMAN,* District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Pittsburgh Trade Exchange, Inc. and Vincent E. Manella, its sole stockholder (collectively hereafter The Exchange) appeal from an order of the district court enforcing a "John Doe" summons served by the Internal Revenue Service. The appeal requires that we consider for the first time the appropriate standards for enforcement of "John Doe" summonses issued on the authority of section 1205(a) of the Tax Reform Act of 1976, Pub.L.94–455, 90 Stat. 1520, 26 U.S.C. § 7609(f). The Exchange contends that the court erred in several respects when it enforced the summons. We affirm.

I

The Exchange is what is commonly known as a "barter exchange" which operates as a clearing house for the exchange of goods and services between its members,

---

\* Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

other than for cash. A member of a barter exchange wishing to purchase particular goods or services can obtain from it a referral to another member which supplies the goods or services desired. The selling member is provided with trade credits equal to the selling price, which can be used, then or in the future, to acquire goods or services from other members. The purchasing member's account, accumulated from sales it has previously made, is debited for the purchase price. For facilitating such barter exchanges The Exchange charges a fee equal to ten percent of the value of each transaction, which compensates it for its referral and record keeping services. Those transactions result, obviously in tax consequences for members engaging in them. The Exchange has been in business since April 1977. All but one of its members are located in Pennsylvania.

In March of 1980 the Internal Revenue Service filed in the district court a petition requesting an order permitting it to serve a John Doe summons on The Exchange. The petition was supported by the affidavit of revenue agent Gerald R. Potocnak. That petition was not served on anyone, and the court, acting *ex parte*, on March 27, 1980 entered an order granting the requested authority. The court acted pursuant to a subsection of the provision in the Internal Revenue Code dealing with special procedures for third-party summonses:

Any summons described in subsection (c) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that—

(1) the summons relates to the investigation of a particular person or ascertainable class of persons,

(2) there is a reasonable basis for believing that such person or group of persons may fail or may have failed to comply with the provisions of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

26 U.S.C. § 7609(f). The subsection is a qualification to the general rules of 26 U.S.C. § 7609(a) & (b) that when a third-party subpoena is served in connection with the investigation of a taxpayer's liability, the taxpayer must be notified and afforded an opportunity to resist compliance and enforcement. Obviously such notice is not possible if the identity of the taxpayer is unknown; hence the special treatment of John Doe summonses.

The summons authorized by the March 27 order was served on The Exchange on April 2, 1980, demanding the production of records reflecting the names and addresses of Exchange members for the calendar years 1978 and 1979, together with

"[c]orporate books of account, ledger, or other records of [The Exchange] which identify for each member every bartering transaction, the date, the participants, and the amount during [those] years . . .."

When The Exchange declined to comply, the Internal Revenue Service brought this action to enforce the summons. An order issued directing The Exchange to show cause why it should not comply. It filed an answer and an opposing affidavit. Over the objection of the Internal Revenue Service a two-day evidentiary hearing was held in July, 1980, and on September 12, 1980 the Court filed a memorandum holding that the summons was proper and an order directing compliance.[1] This appeal followed.

II

The government contends that the enforcement order should be affirmed for a reason which it advanced but the district court rejected. It contends that once the district court in an *ex parte* proceeding decides to authorize a John Doe summons no further inquiry into its propriety can be made. That contention is based upon the

---

1. A panel of this court stayed the order pending disposition of this appeal.

Internal Revenue Service construction of 26 U.S.C. § 7609(h). Enacted at the same time as section 7609(f), subsection (h) provides:

> The United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine proceedings brought under subsections (f) and (g). The determinations required to be made under subsections (f) and (g) shall be made ex parte and shall be made solely upon the petition and supporting affidavits. An order denying the petition shall be deemed a final order which may be appealed.

The Internal Revenue Service reads the quoted language as providing the exclusive method of review of the propriety of any John Doe summons. We disagree.

Prior to the enactment of the Tax Reform Act of 1976 there was no express authorization or prohibition of John Doe summonses, and the control of their use was subject only to those provisions of the Internal Revenue Code dealing with enforcement. 26 U.S.C. § 7604(a). In *United States v. Bisceglia*, 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1974), an enforcement proceeding directed at a bank which resisted a John Doe summons, the Supreme Court held that 26 U.S.C. § 7602 authorized such summonses, subject to those limitations on use of any summons which the Court laid down in *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964) and *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The *Bisceglia* holding produced some concern in Congress that the use of John Doe summonses could become widespread and uncontrolled. This concern was part of a larger one, having to do with Internal Revenue Service examinations of third-party records when the taxpayer might be left unaware. Therefore, the thrust of section 7609, taken as a whole, was to require that the target taxpayer be given notice, so that he would be able to assert appropriate defenses. 26 U.S.C. § 7609(a)–(d).

Appreciation of that context is basic to an understanding of subsections (f) and (h).

John Doe summonses necessarily required separate treatment because the target taxpayer was unknown and thus could not be notified in advance. S.Rep.No.94–938, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Ad.News at 2897, 3798. Such summonses were thus subjected to an additional control, besides that already in 26 U.S.C. § 7604(b) requiring resort to the court for enforcement: for the first time, Congress imposed judicial review of the decision to issue a summons prior to its issuance. It required that a detached and impartial judge in the district of the person to be summoned be satisfied that the three criteria of subsection (f) have been met. Since John Doe process for the production of records may not be issued until authorized by the judge, subsection (f) permits an *ex parte* determination and authorizes an appeal by the Internal Revenue Service from orders denying its petition. Obviously in such an appeal nothing can come before an appellate court except the propriety of *issuing* a summons, not the propriety of *enforcing* it after it issues. The "determinations required to be made under subsection f" is only that: a determination that a summons may issue, not that it should be enforced. Nothing in the 1976 Act or its legislative history suggests that Congress intended to reduce or contract the scope of the district court's authority in subsequent enforcement proceedings. Indeed, the contrary appears to be the case. At 306. Procedural protections, additional to those which the Supreme Court recognized in the *Bisceglia* case, were intended, but the substantive holdings in that case were approved, or at least not overruled.

■ Thus we reject the Internal Revenue Service contention that subsection 7609(h) deprived the district court of authority to conduct an evidentiary hearing in its subpoena enforcement proceeding brought under 26 U.S.C. § 7604(a). Subsection (h) simply does not speak to enforcement questions.

### III

■ The next question is what standards are appropriate in a section 7604(a) proceed-

ing for the enforcement, against a third party, of a John Doe summons. The Exchange, relying chiefly on the language "reasonable basis for believing that such person or group or class of persons may fail or have failed to comply with any provision of any internal revenue law" in 26 U.S.C. § 7609(f)(2), urges that stricter judicial scrutiny is required in John Doe cases than under the familiar rules of *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) and *United States v. McCarthy*, 514 F.2d 368 (3d Cir. 1975). In advancing this construction, The Exchange would have us read section 7609(f)(2) as a substantive contraction of the breath of the summons power conferred in 26 U.S.C. § 7602. It is at least doubtful that the language of the 1976 Act or its legislative history fairly supports that construction. As noted above, section 7609(f) is part of a general provision dealing with third-party summonses, which provides for notice to the taxpayer and an opportunity to intervene. This general section makes cross-reference to section 7602. 26 U.S.C. § 7609(c)(1). The general section did not enlarge the substantive grounds on which a taxpayer could resist enforcement. There is no indication that Congress intended a broader substantive protection of unknown than of known taxpayers. *See* S.Rep.No.94–938, 94th Cong., 2d Sess. at 372–73, *reprinted in* [1976] U.S.Code Cong. & Ad.News at 3800–02; House Conf.Rep.No.1515, 94th Cong., 2d Sess. at 486, *reprinted in* [1976] U.S.Code Cong. & Ad.News at 4190. All that Congress appears to have done in subsection (f) was to add an additional procedural safeguard—an application to an impartial tribunal before issuance of the summons—in cases where notice to the target taxpayer would be infeasible because he was un-

known, neither adding to nor subtracting from the scope of section 7602. We need not decide in this case, however, whether subsection (f) substantively modified section 7602, because on the record before us the Internal Revenue Service clearly has shown a reasonable basis for believing that unknown taxpayers may have failed to comply with the Internal Revenue law.[2] Agent Potocnak and his group supervisor, Krapuszka, testified that a purpose of the summons was to determine the tax liabilities of Exchange members who had engaged in barter transactions, and the court so found. That finding is not clearly erroneous. Agent Potocnak testified that barter transactions such as those arranged by The Exchange are inherently susceptible to tax error since no cash is involved and the only records of the members' credits are kept by The Exchange, which allegedly does not provide members any information regarding their trade accounts. Such circumstances provide a sufficient basis for the Internal Revenue Service's action.

■ The statutory scheme of section 7609 does clearly suggest one additional issue, besides those addressed in *United States v. Powell, supra,* and *United States v. McCarthy, supra,* which the third-party summonses may raise in the enforcement proceeding. Section 7609(a) requires notice to the target of the Internal Revenue summons, while subsection 7609(f) provides an exception for unknown taxpayers, and section 7609(h) permits the court to authorize that exception in an *ex parte* proceeding. We think Congress must have contemplated that the third-party record keeper could, in the enforcement proceeding, question the accuracy of the Internal Revenue Service representation that the targets of the investiga-

2. The author of this opinion believes that those district courts which have found in section 7609(f) greater substantive limitations than those in section 7602 have misconstrued the statute. *See In the Matter of Oil and Gas Producers Having Processing Agreements with Kerr-McGee Corp.*, 500 F.Supp. 440 (W.D.Okla. 1980); *In the Matter of Tax Liabilities of John*

*Does,* Members of the Columbus Trade Exchange in the Years 1977 and 1978, No. c–2–80–410 (S.D.Ohio, June 17, 1980), *appeal docketed,* No. 80–3584 (6th Cir.); *United States v. Brigham Young University,* 485 F.Supp. 534 (D.Utah 1980), *appeal docketed,* No. 80–1058 (10th Cir.). Judge Ackerman does not agree

tion were in fact unknown.[3] This would be an affirmative defense. Otherwise the John Doe procedure might provide a vehicle for avoidance of the notice requirements in section 7609(a). In contesting the truth of the representation that the target taxpayer is unknown, as well as in other challenges to the enforcement of John Doe summons, the procedural rules laid down in *United States v. McCarthy, supra,* apply.

## IV

Applying the foregoing legal standards and procedures to this case, the order of the district case must be affirmed. To start with, neither the answer nor the affidavit filed on behalf of The Exchange put in issue the *bona fides* of the Internal Revenue Service's representation that it did not know the names of most Exchange customers.[4]

Two issues were raised.[5] The first was whether the substantive basis for the summons was sufficient. We have dealt with that contention in Part III.

■■■■ The second issue raised by The Exchange was that the real purpose of the summons was not determination of member tax liability, but general research into the economic impact of barter exchanges. The Exchange produced evidence reflecting a Congressional and Internal Revenue Service concern about barter and its possible impact on the federal revenue. In advancing the contention that a research purpose prevented enforcement of a section 7602 summons, The Exchange relies on *United States v. Humble Oil & Refining Co.,* 488 F.2d 953

(5th Cir. 1974), *vacated and remanded,* 421 U.S. 943, 95 S.Ct. 1670, 44 L.Ed.2d 97 (1975), *aff'd per curiam on remand,* 518 F.2d 747 (5th Cir. 1975), in which the court refused to enforce a summons which it found was designed solely to help a regional Internal Revenue Service office keep up to date on what was going on in a local community. *Humble Oil* is a slender reed, since the judgment based on the first opinion was vacated and remanded for further consideration in light of *United States v. Bisceglia,* 420 U.S. 141, 142, 95 S.Ct. 915, 917, 43 L.Ed.2d 88 (1975), and the per curiam opinion on remand is conclusory. Recently the Court of Appeals for the Fifth Circuit has had occasion to explain the narrow scope of the *Humble Oil* holding:

> On remand, this court distinguished the "John Doe" summons in *Humble* from that in *Bisceglia,* noting that the summons in *Humble* had not been issued to facilitate any ongoing particularized investigation. 518 F.2d at 748. Furthermore, this court concluded: "[T]he information [on the lessors] was sought from Humble to expedite research on an IRS project concerning compliance with the lease restoration requirements of the Internal Revenue Service. An adjustment of tax liability may have incidentally resulted from the project, but the primary purpose of the project was research." 518 F.2d at 748.

In the instant case, the lower court apparently read the above statement in *Humble* to mean that the summons authority granted by section 7602 could not be used if the investigation was conduct-

---

that the cases cited misconstrue section 7609(f).

**3.** This would correspond to the condition, at the issuance stage, that the "identity of the person or persons with respect to whose liability the summons issued ... not [be] readily available from other sources." 26 U.S.C. § 7609(f)(3).

**4.** At the outset of the hearing the attorney for the Internal Revenue Service stipulated that it was not seeking enforcement without notice for the records of some Exchange members whose names were known.

**5.** The Exchange's answer also alleged that the summons was issued for the purpose of harassing it and discouraging members from engaging in barter transactions. (Third and Ninth separate defenses). It also alleged overbreadth (Seventh separate defense) and that the Internal Revenue Service already had the information (Sixth separate defense). No affidavit was filed or testimony offered supporting these defenses; therefore, they are of no significance. *See United States v. McCarthy, supra.*

ed primarily for research purposes, even though one of the purposes of the investigation was to ascertain the tax liability of a particular taxpayer. The district court misinterpreted our decision in *Humble*. We hold, as we indicated in *Humble*, that information obtained pursuant to a summons issued under section 7602 may be used for research purposes if the summons is issued in aid of an investigation of the tax liabilities of a specific taxpayer or of an unknown taxpayer where there is an ongoing particularized investigation. (footnotes omitted).

*United States v. First National Bank in Dallas*, 635 F.2d 391 (5th Cir. 1981); *see also United States v. Reprints, Inc.*, 79–1 U.S. T.C. ¶ 9108 (N.D.Ga.1978). That explanation is consistent with the settled case law in this circuit that a dual purpose for issuance of a summons is permissible, at least up until the Internal Revenue Service has made an institutional commitment to recommend prosecution, so long as one purpose is determination of the civil tax liability of taxpayers. *See United States v. Garden State National Bank*, 607 F.2d 61 (3d Cir. 1979) and cases cited. The court here found that there was such a purpose.

## V

The judgment appealed from, enforcing the John Doe summons for records of transactions by unknown members of The Exchange, will be affirmed.