541 F.Supp. 213 (1982)
In the Matter of the Tax Liabilities of John DOES, Unidentified Clients and Customers Who Invested or Participated in Dairy Cattle Programs Promoted by Agricultural Asset Management Co., Inc., in the years 1978, 1979, and 1980.
Misc. No. 646.
United States District Court, N. D. New York.
April 19, 1982.
*214 Hinman, Straub, Pigors & Manning, P. C., Albany, for Ag. Asset, Inc.; Leslie M. Apple, Albany, N. Y., of counsel.
George H. Lowe, U. S. Atty., Syracuse, N. Y., Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., U. S. Dept. of Justice, Washington, D. C., for the U. S., William P. Fanciullo, Asst. U. S. Atty., Albany, N. Y., Matthew Yackshaw, Trial Atty., Tax Div., Washington, D. C., of counsel.

MEMORANDUM-DECISION and ORDER
MINER, District Judge.

I.
On January 19, 1982, the United States filed a petition for leave to serve a third party John Doe summons upon Agricultural Asset Management Co., Inc. (hereinafter "Ag Asset") and Mr. Jeffrey Adler, Ag Asset's treasurer. The petition was filed pursuant to 26 U.S.C. §§ 7402[1] and 7609(f)[2] and was properly supported with a memorandum and affidavit. The Summons would require Ag Asset to produce the names and addresses of all investors or participants in the Ag Asset program, the social security or employer identification numbers of these investors or participants, and any books, records, or documents containing the above information.
Thereafter, this Court signed an Order, after an ex parte proceeding pursuant to 26 *215 U.S.C. § 7609(h)(1),[3] authorizing the Internal Revenue Service (hereinafter "IRS") to serve the John Doe summons upon Ag Asset and Mr. Adler. The Order provided that if Ag Asset and Adler objected to compliance with the Summons, they should appear before this Court on February 26, 1982 to show cause why the Summons should not be enforced.[4] Before this Court are Ag Asset's objections to the enforcement of the John Doe Summons, Ag Assets's motion for an Order of discovery directed to IRS officials pursuant to Fed.R. Civ.P. 26(a) and (b), and the Government's motion for a protective order prohibiting such discovery pursuant to Fed.R.Civ.P. 26(c).

II.
The pertinent facts here are not seriously in dispute. Ag Asset, located in Salem, New York, is in the business of promoting and managing tax shelter programs involving the financing of purchases of dairy cattle herds. Essentially, an investor, either an individual or a partnership, in one of Ag Asset's programs provides a portion of the amount necessary to purchase the herd. Ag Asset then obtains the remainder from certain lending institutions using recourse, nonrecourse or partially nonrecourse notes[5] secured by the herd.
Once the herd is purchased, it is leased to a farmer, originally recruited by Ag Asset, who is responsible for the care and maintenance of the herd and who, under contract, must maintain the quantity and quality of the herd. If a cow dies or is culled,[6] the farmer must replace it, unless the loss is covered by insurance. During the term of the contract, each investor is entitled to a certain percentage of the milk receipts, which are paid to Ag Asset as managing agent for the investor. Ag Asset uses these funds to make the payments called for by the notes and to pay any other expenses that are incurred. Upon completion of the contract, the parties may renew the contract, the farmer may purchase the herd at a specified price, or he may relinquish the herd to the investor. In this intricate tax scheme every party seems to prosper. Ag Asset collects large fees, ostensibly as a "middleman" for bringing the farmer and the investor together, the farmer obtains income from milk sales and may eventually obtain a herd without the large downpayment usually required in herd purchase financing agreements, and the investor, since he is considered to be the owner of the herd, may deduct "business" expenses, take investment credits and a depreciation allowance.
It is the tax consequences of the Ag Asset program that are in serious contention. The IRS takes the position, based upon Revenue Ruling 78-411,[7] that the investor *216 in programs such as Ag Asset's is not, in actuality, the owner of the dairy herd, but simply finances its purchase. It therefore contends that the investor is not entitled to take the deductions and tax credits normally available to the owner of a dairy herd. Moreover, the IRS takes an alternative position that the investment credits and deductions for depreciation and management fees are not permitted to the investors even if the investors can be considered the owners of the herds.[8]
The IRS purportedly has examined the 1979 and 1980 income tax returns of 19 partnerships and 10 individuals who invested in the dairy cattle investment program promoted by Ag Asset and asserts that, in each case, investors improperly took deductions for depreciation and management fees and also took investment tax credits relating to investments in the dairy herd program. In addition, the IRS maintains that a prospectus prepared by Ag Asset indicates that the investor will take deductions for depreciation and management fees and take investment tax credits. The tax deductions and investment credits described in the prospectus assertedly are identical to the deductions and credits examined in the 29 tax returns. Therefore, the IRS maintains it has a reasonable basis to believe that a significant number of the clients of Ag Asset[9] have failed to comply with the Internal Revenue laws, and, thus, the Summons should now be enforced. (Affidavit of Arthur McDonald, ¶¶ 5-9).[10]
In contrast, Ag Asset maintains that since the IRS has not satisfied the criteria set forth in 26 U.S.C. § 7609(f)(1), (2) and (3) the Summons should not be enforced. More specifically, Ag Asset asserts that, since the IRS has examined the tax returns of various investors in the program and has not made a determination with respect to any proposed deficiency, the IRS is involved in a "fishing expedition." It therefore contends that the Summons does not relate to the investigation of a particular person or ascertainable group or class of persons as required by § 7609(f)(1).
In addition, Ag Asset alleges that the IRS has not established a reasonable basis to believe that any of Ag Asset's clients or customers have not complied, or may not comply, with any Internal Revenue law. It alleges further that the Government has not offered any specific facts supporting the IRS contentions, and, more significantly, that Revenue Ruling 78-411, the legal basis for the IRS' position, is factually inapplicable. Finally, Ag Asset claims that the IRS has not demonstrated that the information it seeks is not already within its possession, as required by § 7609(f)(3), and that the Summons was not issued for a legitimate or authorized purpose, is burdensome and overbroad, constitutes an unreasonable search and seizure, and represents an unwarranted intrusion into the privacy of Ag Asset, its clients and customers.

III.
Generally, the authority of the IRS to conduct investigations regarding tax liability and to issue summonses in conjunction with such investigations is derived from 26 U.S.C. § 7602.[11] The standards for the enforcement *217 of a summons have been enunciated by the Supreme Court in United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964):
Reading the statutes as we do, the Commissioner need not meet any standard of probable cause to obtain enforcement of his summons, either before or after the three-year statute of limitations on ordinary tax liabilities has expired. He must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed .... 379 U.S. at 57, 58, 85 S.Ct. at 255.
Thus, to obtain enforcement, the Government need only establish all of the above Powell standards, and, once having met this burden, a prima facie case for enforcement has been made. The burden then falls upon the contestant to show that enforcement of the summons would be an abuse of the Court's process or otherwise would be improper under the Powell criteria. United States v. Powell, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964); United States v. Davey, 543 F.2d 996, 1000 (2d Cir. 1976).
However, in addition to the issuance and enforcement of "taxpayer" summonses, the IRS has frequently issued summonses to third parties to identify and obtain the names of certain unknown taxpayers. Prior to 1976, the only restraint on the use of these "John Doe" summonses was self-imposed by the Commissioner of the Internal Revenue Service. With the approval of John Doe summonses by the Supreme Court in United States v. Bisceglia, 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975), Congress became concerned that the use of John Doe summonses might be widespread and uncontrolled. In an effort to place some restraint on the issuance of these third party summonses, while at the same time preserving the John Doe summons as an investigative tool, Congress passed Section 7609(f) and (h) of the Internal Revenue Code in 1976. S.Rep.No.94-938, 94th Cong., 2d Sess., reprinted in [1976] U.S.Code Cong. & Ad.News at 2897, 3798.
Section 7609(f) provides that a John Doe summons may not be issued unless a District Court is satisfied that (1) the summons is issued as part of an investigation of an ascertainable person or class of persons; (2) that there exists a reasonable basis for belief that some or all of that class may not have complied with some Internal Revenue provision; and (3) that the information cannot be readily obtained elsewhere. Section 7609(h) grants jurisdiction to the appropriate District Court to determine proceedings brought under subsection (f), and mandates that such determinations be made ex parte and solely upon the petition and supporting affidavits.[12]
Thus, there is a distinction here to be made between the standards necessary for the enforcement of a summons and the criteria established for the issuance of the summons. It is Ag Asset's position, predicated upon the holdings of such cases as United States v. Maxwell, 81-1 U.S.T.C. *218 ¶ 9378 (D.Nev.1981) and United States v. Brigham Young University, 485 F.Supp. 534 (D.Utah 1980), appeal pending, No. 80-1058 10th Cir., that the issuance requirements of Section 7609(f) are appropriate grounds for contesting the enforcement of the summons.[13] This Court rejects such reasoning.
An analysis of the statutory framework and legislative history of Section 7609(f) reveals a flexible approach to the issuance of John Doe summonses. While wishing to preserve the John Doe summons as an investigative tool, Congress did not intend that the John Doe summons be used by the IRS to engage in a "fishing expedition." For this reason, "[a]ll that Congress appears to have done in subsection (f) was to add an additional procedural safeguard an application to an impartial tribunal before issuance of the summonsin cases where notice to the target taxpayer would be infeasible because he was unknown, neither adding to nor subtracting from the scope of section 7602." United States v. Pittsburgh Trade Exchange, Inc., 644 F.2d 302, 306 (3d Cir. 1981). Congress did not, however, intend to impose an undue burden on the IRS in connection with obtaining court authorization for this type of summons. The IRS is not required under Section 7609(f) to produce conclusive evidence of an actual tax violation as a condition precedent to obtaining leave to issue a John Doe summons. "[Clearly,] Congress did not expect the [IRS] to delay its investigation of suspicious or unusual circumstances until it had evidence of an actual violation. It is [sufficient] that the facts surrounding a transaction suggest the probable occurrence of reporting errors." In re Tax Liabilities of John Does, Members of Columbus Trade Exchange in 1977 and 1978, 671 F.2d 977, 980 (6th Cir. 1982). Thus, the legislative history surrounding John Doe summonses clearly indicates that compliance with the Section 7609(f) standards is merely a condition precedent for the issuance of the summons, with the district courts interposed to prevent administrative abuse. It was never intended that the Section 7609(f) criteria be used in connection with an attack on summons enforcement. See S.Rep.No.94-938, 94th Cong., 2d Sess. at 372-73, reprinted in [1976] U.S.Code Cong. & Ad.News at 3800-02; House Conf.Rep.No.1515, 94th Cong., 2d Sess. at 486, reprinted in [1976] U.S.Code Cong. & Ad.News at 4190. See also United States v. Pittsburgh Trade Exchange, Inc., supra.
Indeed, the statutory framework demonstrates that the Section 7609(f) criteria are concerned solely with issuance. Section 7609(h)(1) provides that the determinations to be made under subsection (f) shall be made ex parte solely upon the petitions and supporting affidavits. Third parties are not required to be notified and are not permitted to intervene. See In re John Does Clients and Customers of London Metals, Inc., 42 A.F.T.R.2d 78-5881 (D.Utah 1978). See also In re The Purchasers of Master Recordings from Bowman Recording and Production Co., 45 A.F.T.R.2d 80-1553 (N.D.Ga.1980). To now permit a reopening of the Section 7609(f) determination in the summons enforcement proceeding would render the prior ex parte proceeding entirely superfluous. It would create a situation where an adversary proceeding, addressing *219 the § 7609(f) requirement of a reasonable belief of the existence of a tax violation, could quickly degenerate into a long, drawn-out hearing on the meritsa situation that would stultify the Internal Revenue Services' investigatory power and one Congress distinctly intended to prevent. See Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971).
Therefore, since Ag Asset may not employ the Section 7609(f) criteria to obstruct the enforcement of the Summons, there remains only to be seen whether the IRS has met the Powell standards for enforcement, and whether Ag Asset has substantially shown that enforcement here would represent "an abuse of the court's process." United States v. Powell, supra, 379 U.S. at 57-58, 85 S.Ct. at 254-55. This Court believes that the IRS has met the burden enunciated in Powell.
As stated, Powell set a four-part test: (1) the investigation must be conducted pursuant to a legitimate purpose; (2) the inquiry must be relevant to that purpose; (3) the information sought is not already within the Commissioner's possession, and; (4) the administrative steps required by the Code have been followed. It is clear here that the investigation is pursuant to a legitimate purposethe investigation of suspected tax violators. Moreover, the inquiry here is relevant to that purpose in that "the inspection sought might have thrown light upon the correctness of the taxpayer's returns....", United States v. Shlom, 420 F.2d 263, 265 (2d Cir. 1969), cert. denied 397 U.S. 1074, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970), citing Foster v. United States, 265 F.2d 183, 186-187 (2d Cir. 1959), cert. denied, 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261 (1959), and there exist no serious contentions that the names and addresses of potential tax violators are already in the hands of the IRS or that the necessary administrative procedures were not followed.
Thus, since the Government has demonstrated a prima facie case necessary for enforcement, the burden has shifted to Ag Asset to attack enforceability on "any appropriate ground." Reisman v. Caplin, supra; United States v. Davey, supra. Generally, this would include the defense that the material is sought solely for the improper purpose of obtaining evidence for use in a criminal prosecution. United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978); Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). Here, Ag Asset has not presented a scintilla of evidence demonstrating governmental bad faith in its investigation. Therefore, the Summons should be enforced.[14]
Finally, there is no merit to Ag Asset's contention that discovery is mandated. For discovery to be allowed, there must be some evidence that the IRS is proceeding in "bad faith." See United States v. Chase Manhattan Bank, 598 F.2d 321 (2d Cir. 1979); see also United States v. Marine Midland Bank of New York, 585 F.2d 36 (2d Cir. 1978). Since bad faith here has not been demonstrated, Ag Asset's motion for discovery should be denied.

IV.
Accordingly, Ag Asset shall comply with the Summons heretofore served. Ag Asset's *220 motion for discovery pursuant to Fed. R.Civ.P. 26(a) and (b) is denied; consequently, the Government's motion for a protective order prohibiting such discovery pursuant to Fed.R.Civ.P. 26(c) is also denied.
It is so Ordered.
NOTES
[1] 26 U.S.C. § 7402(a) provides:

To issue orders, processes, and judgments. The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of ne exeat republica, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.
[2] 26 U.S.C. § 7609(f) provides:

Additional requirement in the case of a John Doe summons.Any summons described in subsection (c) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that
(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
(3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.
[3] 26 U.S.C. § 7609(h)(1) provides:

Jurisdiction of district court.
(1) The United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine proceedings brought under subsections (f) or (g). The determinations required to be made under subsections (f) and (g) shall be made ex parte and shall be made solely upon the petition and supporting affidavits. An order denying the petition shall be deemed a final order which may be appealed.
[4] Oral arguments before this Court, concerning Ag Asset's objections to summons enforcement, were held on that date.
[5] This point is controverted. The IRS claims that the notes are all nonrecourse. Ag Asset asserts that the notes are either recourse or only partially nonrecourse and that the investor's cash down payment is twenty-five percent.
[6] That is, ceases to give milk.
[7] Rev.Rul. 78-411 provides in part:

Business expenses; livestock investment program. A corporation "sells" animals to investors for nonrecourse notes and contracts to raise and breed the animals for an annual fee. The corporation guarantees to purchase any offspring for a specified price and guarantees to repurchase at a specified price after five years the animals originally sold to the investors. The original transaction is not a sale for federal income tax purposes, and the corporation remains the owner of the animals during the contractual period. The investors are not entitled to depreciation or investment credit with respect to the animals, and the corporation must capitalize the cost of the animals.
[8] The IRS argues that no depreciation is allowable because the dairy herds are not losing their usefulness or value, since the farmer must replace any cow which dies or is culled. Therefore, at the end of the program, the value and usefulness of the herd is identical to that of a herd at the beginning of the program. Moreover, the IRS maintains that the management fees here are in excess of normal management fees for the profession and that the "excess" fees merely constitute startup expenses which are not deductible. In addition, since the herd is "used" by the same party after the investor acquires it, the IRS takes the position, based on Treasury Reg. § 1.48-3(a)(2)(i), that the investor does not qualify for investment credits.
[9] The IRS believes there are currently 350 such investors.
[10] Furthermore, it is the position of the IRS that regardless of whether there now exist actual tax violations, the John Doe summons should be enforced to facilitate the present tax investigation.
[11] 26 U.S.C. § 7602 provides:

Examination of books and witnesses
For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax liability at law or in equity of any transferee of fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized
(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.
[12] See N. 2 & 3 supra.
[13] In United States v. Powell, supra, the Supreme Court, in addition to delineating the aforementioned standards for summons enforcement, pronounced that those summoned "may challenge the summons on any appropriate ground." United States v. Powell, 379 U.S. at 58, 85 S.Ct. at 255, quoting from Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 519, 11 L.Ed.2d 459 (1964). The District Courts in United States v. Maxwell, supra, and United States v. Brigham Young University, supra, held that the requirements of § 7609(f) are "appropriate" grounds to attack summons enforcement. Moreover, the Brigham Young University Court, in a situation similar to the one at bar, held:

It would be inappropriate to rule that because the court had signed an ex parte order, it should now refuse to consider in a contested proceeding the claim of a party that the requirements of the applicable statute were not fulfilled. This is particularly so where this court has heretofore had served upon BYU an order to show cause why it `should not be compelled to obey' the IRS summons. That is exactly what BYU is now attempting to show and it should be permitted to do so if it has a legitimate basis.
[14] Ag Asset has also argued that the summons is overbroad and constitutes an unreasonable search and seizure and an unwarranted intrusion into Ag Asset's and its customers' privacy. Although the constitutionality of John Doe summonses is well accepted, United States v. Bisceglia, 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975), a District Court may refuse to enforce a summons which is excessively burdensome. United States v. Harrington, 388 F.2d 520 (2d Cir. 1968). Here Ag Asset argues that the Summons is overbroad since it asks for all books, documents and records and it requires the names and addresses of all "Investor[s] or Participant[s]" (the objection here is to the requirement of the disclosure of all "Participant[s]", since this would entail disclosing the identity and whereabouts of any employee who is participating or has participated in the program a requirement that Ag Asset terms onerous). However, the books, documents and records required relate to a specific investigation and the Summons, therefore, is not overbroad in its scope. The phase "Investor or Participant" clearly, since it is in the disjunctive not conjunctive, relates to the customers of Ag Asset and not to employees or other classes of participants in the program.