**In the Matter of The Tax Liabilities of John DOES, Members of the Columbus Trade Exchange in the Years 1977 and 1978 United States of America, Petitioner-Appellant.**

No. 80–3584.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 27, 1982.

Decided March 3, 1982.

James C. Cissell, U. S. Atty., Richard D. Letts, Asst. U. S. Atty., Columbus, Ohio, John F. Murray, William A. Whitledge, Steven Toscher, M. Carr Ferguson, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for the U. S.

David J. Curtin, Washington, D. C., for Members of the Columbus Trade Exchange.

Before EDWARDS, Chief Judge, MARTIN, Circuit Judge, and REED,* District Judge.

PER CURIAM.

This case requires us to consider the circumstances under which the Internal Revenue Service may seek to ascertain the identities of unknown taxpayers through the issuance of "John Doe" summonses. A "John Doe" summons is, in essence, a direction to a third party to surrender information concerning taxpayers whose identity is currently unknown to the IRS.

Until 1976, there was no statutory restraint on the Commissioner's use of this device. However, as part of the Tax Reform Act of 1976, Congress added to the Code § 7609(f) and (h), entitled "Special Procedures for Third Party Summonses." 26 U.S.C. § 7609(f) and (h).

Section 7609(f) provides that a John Doe summons may be served only if the Service demonstrates, to the satisfaction of a United States District Judge: 1) that the summons relates to the investigation of an ascertainable person or class of persons; 2) that there exists a "reasonable basis for believing" that some or all of that class may have failed to comply with the tax laws; and 3) that the information sought cannot be readily obtained elsewhere.

Section 7609(h) vests jurisdiction in the appropriate District Courts to entertain *ex parte* proceedings brought under subsection (f) and directs those courts to make their determinations on the basis of the Service's petition and supporting affidavits.

In the present case, the Service seeks to investigate the members of the Columbus Trade Exchange, a barter exchange which operates as a clearing house for the exchange of goods and services. Members of the exchange engage in non-cash transactions which may produce reportable income to the parties. According to the affidavits filed below, the Service has audited the tax returns of members of barter exchanges similar to this one and found a very high incidence of improper reporting practices. On the basis of this experience, it now wishes to audit members of the Columbus Exchange.

To this end, the Service asked Art Goering, Director of the Columbus Trade Exchange, to divulge the names of members

---

* Honorable Scott Reed, United States District Judge for the Eastern District of Kentucky, sitting by designation.

and their transaction records for the years 1977 and 1978. Mr. Goering refused. Thereupon, the Service initiated these *ex parte* proceedings in District Court, seeking permission to issue a John Doe summons which would require Mr. Goering to produce the requested information.

The District Court found that the Service had met the requirements of § 7609(f)(1) and (3), but that it had not complied with § 7609(f)(2) by demonstrating a "reasonable basis for believing" that Exchange members may have improperly reported barter transactions on their tax returns. In a memorandum opinion, the District Judge recognized that issuance of a John Doe summons does not require a showing of "probable cause." However, he observed that the government's showing in the present case rests on an inference that members of the Columbus Exchange are likely to commit the same reporting errors as members of other bartering organizations. This inference, he held, is too tenuous to constitute the "reasonable basis for belief" required by the statute.

The government appeals the District Court's order denying leave to serve the summons. The only issue before us is whether the District Court interpreted the statutory standard of a "reasonable basis for belief" in too rigorous a manner.

The Service contends that its prior experience with the tax returns of members of other barter exchanges is a sufficient basis for suspecting improper or erroneous reporting by members of the Columbus Exchange. It cites passages from the legislative history of § 7609(f) which indicate that Congress did not intend to impose stringent restrictions on the Service's investigatory function, but merely sought to prevent the *indiscriminate* exercise of the John Doe summons power. We agree and reverse.

Congress apparently enacted § 7609(f) and (h) of the Code in response to the Supreme Court's decision in *United States v. Bisceglia*, 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975). In *Bisceglia*, the Court upheld the Service's use of the John Doe summons device in its investigation of an unidentified taxpayer who had made two $20,000 bank deposits in worn $100 bills. The Court's *Bisceglia* holding left undefined the limits of the Service's power to issue John Doe summonses. Congress, however, was unwilling to leave the exercise of this power to the untrammeled discretion of administrative personnel, and so added § 7609(f) and (h) to the Tax Code.

■ The House Committee Report on the legislation reveals a "common sense" approach to the issuance of John Doe summonses:

> [W]here there are unusual (or possibly suspicious) circumstances, and the Service needs to learn more details of the situation in order to determine whether tax liability should be assessed against some person (as well as the identity of the person who may be liable for tax), use of the John Doe summons may be appropriate.
>
> While the committee believes it is important to preserve the John Doe summons as an investigative tool which may be used in appropriate circumstances, at the same time, the committee does not intend that the John Doe summons is to be available for purposes of enabling the Service to engage in a possible "fishing expedition." For this reason, the committee intends that when the Service does seek court authorization to serve [a] John Doe summons, it will have specific facts concerning a specific situation to present to the court.
>
> On the other hand, the committee does not intend to impose an undue burden on the Service in connection with obtaining a court authorization to serve this type of summons. * * * It is enough for the Service to reveal to the court evidence that a transaction has occurred, and that the transaction (in the context of such facts as may be known to the Service at that time) is of such a nature as to be *reasonably suggestive of the possibility that the correct tax liability with respect to that transaction may not have been reported* (or might not be reported in the case of a current year transaction, with respect to which a return is not yet due). (emphasis added).

H.Rep.No.94–658, 94th Cong., 1st Sess. p. 311, U.S.Code Cong. & Admin.News 1976, pp. 2897, 3207. We cannot construe this passage from the legislative history to mean that Congress intended to require the IRS to produce conclusive evidence of an actual tax violation as a prerequisite to obtaining a John Doe summons. On the contrary, we believe this language indicates only an intent to prevent the Service from exercising its summons power in an arbitrary or quixotic manner.

Our conclusion is borne out by the inclusion in the Committee Report of several examples of "proper" John Doe summonses. In addition to citing the fact situation in *Bisceglia, supra*, the Committee suggested that the Service could appropriately seek John Doe summonses "to obtain the names of corporate shareholders involved in a taxable reorganization which has been characterized by the corporation (in a letter to its shareholders) as a nontaxable transaction." Thus, it is clear that Congress did not expect the Service to delay its investigation of suspicious or unusual circumstances until it had evidence of an *actual* violation; it is enough that the facts surrounding a transaction suggest the probable occurrence of reporting errors.

In the present case, we are persuaded that the Service offered the District Court sufficient information to justify the issuance of a John Doe summons. The affidavits filed below establish that the tax returns of barter exchange members have, historically, exhibited numerous errors in the reporting of non-cash transactions. We think the Service's past experience with this problem is a "reasonable basis" for its decision to investigate the returns of Columbus Exchange members. We cannot agree with the District Court's conclusion that the Service is seeking to embark on a mere "fishing expedition." We find support for this conclusion in the Third Circuit's recent opinion in *United States v. Pittsburgh Trade Exchange*, 644 F.2d 302 (3rd Cir. 1981), a case involving a factual background nearly identical to the present situation.

Accordingly, the judgment of the District Court is reversed and the case remanded for issuance of an appropriate order.