UNITED STATES of America and James Oys, an Officer of the Internal Revenue Service, Appellants,

v.

BRIGHAM YOUNG UNIVERSITY and Dallin H. Oaks, President of Brigham Young University, Appellees.

No. 80–1508.

United States Court of Appeals, Tenth Circuit.

June 11, 1982.
Rehearing Denied Aug. 26, 1982.

William A. Whitledge, Washington, D. C. (Michael L. Paup and Charles E. Brookhart, Attys., Tax Div., Dept. of Justice, and M. Carr Ferguson, Asst. Atty. Gen., Washington, D. C., of counsel; Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, with him on brief), for appellants.

H. Hal Visick, Provo, Utah (Eugene H. Bramhall, Provo, Utah, with him on brief), for appellees.

Before McWILLIAMS, DOYLE and SEYMOUR, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is an appeal by the United States, and James Oys, an officer of the Internal Revenue Service, from a judgment of the United States District Court for the District of Utah, denying enforcement of an IRS summons served on Brigham Young University (BYU). The opinion of the district court appears as *United States v. Brigham Young University*, 485 F.Supp. 534 (D.Utah 1980).

The summons here involved is a John Doe summons whereby the IRS seeks to learn from BYU officials the names of those who made charitable contributions *in kind* to BYU, not including securities, for the tax years 1976, 1977, and 1978.[1] The district court, the Honorable Aldon J. Anderson presiding, authorized service of the summons here involved pursuant to the provisions of 26 U.S.C. § 7609(f) and (h). Section 7609(f) mandates a preservice showing of relevance and necessity for the summonses which do not identify the taxpayer, or taxpayers, with respect to whose liability they are issued. The statute provides that a John Doe summons may be served only after a "court proceeding" in which the Secretary establishes: (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons; (2) there is a reasonable basis for believing that such person or group of persons may fail or may have failed to comply with any provision of any internal revenue law; and (3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources. Section 7609(h)(1) further provides that the "court proceeding" shall be conducted *ex parte*, and that any factual determination by the court is to be made solely on the basis of the petition and supporting affidavits.

The John Doe summons above referred to, service of which was authorized by

---

1. BYU is an educational institution which is exempt from income taxation pursuant to Section 501(c) of the Internal Revenue Code of 1954. 26 U.S.C. § 501(c). Section 170 of the Code provides that charitable contributions to an exempt educational institution are deductible from the income of the donor.

Judge Anderson, was subsequently served on BYU. BYU, however, declined to comply with the summons, whereupon the United States instituted the present proceedings to enforce the summons pursuant to subsections 7402(b) and 7604(a) of the Internal Revenue Code.[2]

The enforcement proceeding was heard by another federal district judge for the District of Utah, the Honorable David K. Winder. At the enforcement proceeding, BYU objected to enforcement on several grounds, only one of which was relied on by the district court for refusing to enforce.[3] The district court declared that the "critical issue thus becomes whether there is a reasonable basis for believing that the [unknown] individuals in the unaudited class of donors in kind to BYU have overvalued their donation." In this regard, the district court held that the IRS had failed to establish a "reasonable basis" for thus "believing," and denied enforcement for failure to comply with the requirement of 26 U.S.C. § 7609(f)(2). In so holding, the district court erred. We therefore reverse.

■ In the district court, the government argued that BYU could not challenge, in the enforcement proceeding, the determination previously made by Judge Anderson that the IRS had established a "reasonable basis for believing that such person, or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law." The district court rejected this argument. On appeal, the government's initial position is that the district court erred in permitting BYU to challenge, in the enforcement proceeding, the earlier determination by Judge Anderson that there had been compliance with 26 U.S.C. § 7609(f)(2). In this regard the IRS argues that the showing required by subsection 7609(f)(2) is, under subsection 7609(h), to be determined in an *ex parte* proceeding, and that a determination that there has been compliance with subsection 7609(f)(2) cannot be challenged in an enforcement proceeding. We do not agree with this argument.

26 U.S.C. § 7609(f)(2) sets forth a requirement that must be met by the government *before* a John Doe summons may be served. We are now past that point.[4] The district court found that there was a compliance with § 7609(f)(2) and authorized

---

2. Subsections 7402(b) and 7604(a) both grant jurisdiction to the district courts to compel attendance, testimony, or production of papers or books of any person summoned under the internal revenue laws.

3. BYU contended the summons was invalid because the IRS was without a reasonable basis for believing that charitable contributors in kind to BYU had failed to comply with the internal revenue laws in violation of 26 U.S.C. § 7609(f)(2). Furthermore, BYU asserted the information was readily available to the IRS through its own files; thus, the § 7609(f)(3) showing had not been met. The University conceded that the IRS had met the requirements of § 7609(f)(1). In addition, BYU argued that it was not a third-party recordkeeper within the meaning of § 7609(a)(3); therefore, it was not amenable to the service of a John Doe summons under any circumstance. Finally, in supplemental authority, BYU urged that enforcement of the summons would infringe upon the donors' freedom of association under the first amendment. The district court held that all save one of these contentions were without merit. 485 F.Supp. at 536–37. BYU does not renew them on appeal.

4. The legislative history to section 7609 reveals that the thrust of this provision was to provide taxpayers with notice of the service of a third-party summons and right to challenge the summons in court. See H.R.Rep.No.94–658, 94th Cong., 1st Sess. (1975), *reprinted in* [1976] U.S. Code Cong. & Ad.News 2897, 3202; S.Rep.No. 94–938, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Ad.News 3439, 3796. In the cases of John Doe summonses, however, it was not possible for the IRS to comply with the notice requirement provided in subsection (a) of the bill. Nor, for the most part, could John Does intervene in enforcement proceedings as they frequently were unaware that a summons had issued. Thus, Congress elected to require the IRS to seek court approval and demonstrate reasonable cause before it could serve a John Doe summons on a third party. The procedure imposed by Congress in subsection (f) is best characterized as a prior restraint on the service of John Doe summonses enacted for the protection of the privacy of unknown taxpayers.

service of the summons. Pursuant to such authorization, service was made on BYU. When BYU refused to comply with the summons, the government instituted the present enforcement proceedings. In those proceedings, BYU was by order of court directed to show cause why it should not be compelled to obey the summons. BYU appeared in the enforcement proceedings and, as one ground for denying enforcement, challenged the earlier *ex parte* determination that the requirement of 26 U.S.C. § 7609(f)(2) had been met. We do not believe that the provisions of 26 U.S.C. § 7609(h) bar BYU from challenging in the enforcement proceedings the prior *ex parte* determination that there had been compliance with 26 U.S.C. § 7609(f)(2).[5]

An enforcement proceeding is "an adversary proceeding affording a judicial determination of the challenges to the summons and giving complete protection to the witness" and "the witness may challenge the summons on any appropriate grounds." *Reisman v. Caplin*, 375 U.S. 440, 446, 449, 84 S.Ct. 508, 512, 513, 11 L.Ed.2d 459 (1964). Further, in an enforcement proceeding, the district court may, under proper circumstances, "inquire into the underlying reasons for the examination." *United States v. Powell*, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). In *Powell*, the Supreme Court also observed that since it is the court's process which is being invoked to enforce the administrative summons, the court should not permit its process to be abused. We do not believe that the provisions now appearing at 26 U.S.C. § 7609 render inapplicable the principles set forth in such cases as *Reisman* and *Powell*. We conclude that subsection 7609(f)(2) may be raised by third parties as an appropriate

ground on which to challenge a summons in an enforcement proceeding in order to prevent abuse of the court's process. In *United States v. Pittsburgh Trade Exchange, Inc.*, 644 F.2d 302 (3rd Cir. 1981) the Third Circuit rejected the argument advanced here by the government.

The critical issue in the present appeal is whether the district court in the enforcement proceeding erred in holding that there had been noncompliance with 26 U.S.C. § 7609(f)(2). We conclude that it did commit error in this regard.

James Oys, Chief of the Examiner's Section of the Internal Revenue Service, assigned to the Salt Lake City, Utah, Office, was the only witness called by either party at the enforcement proceeding. Oys' testimony at the enforcement hearing paralleled his affidavit which was before Judge Anderson when he authorized service of the summons on BYU.

From Oys, we learn that prior to petitioning the district court for permission to serve the John Doe summons on BYU, the IRS had audited the tax returns of 162 individual taxpayers who had claimed a deduction for charitable contributions, in kind, to BYU. In every instance the examining agent had determined that the value of the gift claimed as a deduction on the return thus audited was excessive. The aggregate value of the gifts claimed on these tax returns was approximately $18,000,000, and the IRS disallowed approximately $16,000,000 of the claimed deductions. The IRS asserts that the results of these audits constitute a "rational basis" for believing that other taxpayers who also made contributions in kind to BYU may have overvalued their gifts to BYU. We agree with this argument.

---

**5.** Third parties traditionally have enjoyed the right to challenge John Doe summonses served upon them by the IRS requesting the production of documents in their custody. *See, e.g., United States v. Bisceglia*, 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1973); *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). Although section 7602 grants the IRS broad power to issue summonses, includ-

ing John Doe summonses, to facilitate tax investigations, the Service lacks the authority to directly enforce summonses. That power is vested in the district courts pursuant to 7402(b) and 7604(a). *United States v. Harris*, 628 F.2d 875, 879 (5th Cir. 1980). *Accord, United States v. Moon*, 616 F.2d 1043, 1045 (8th Cir. 1980) (per curiam); *United States v. Theodore*, 479 F.2d 749, 751 (4th Cir. 1973).

The statute provides that in order for the IRS to serve a John Doe summons the Secretary must establish to the satisfaction of the district court a "reasonable basis for believing" that "such person or group or class of persons" may have failed to comply with the tax laws. Under the statute, the Secretary does not have to show that there has actually been a tax violation. Such would be an overly rigorous test not required by the statutory language employed by Congress.[6] And, under the statute, the "belief" is that the unidentified individual taxpayer, or the group of taxpayers to which he, or she, belongs, "may have failed" to comply with the tax laws. In short, the test laid down by Congress is one of reasonableness, and in our view, the IRS in the instant case met that test. The facts here are not in dispute. The district court simply erred in concluding that such facts failed to meet the statutory requirement. Where an audit of 162 individual tax returns of taxpayers claiming deductions for charitable contributions in kind to BYU revealed that in each instance the amount of the contribution was overvalued, and generally grossly overvalued, that fact forms a reasonable basis for believing that out of the approximately 150 other persons making charitable contributions in kind to BYU, some of them also may have overvalued their gift to BYU.

BYU points out that of the 162 returns which overvalued the deduction for a charitable contribution to BYU, the great majority involved donations of art objects and silver mining claims. In this regard, BYU offered to disclose to the IRS the names of all of its donors of art objects and silver mining claims. IRS declined to accept this offer, and insists that, under the circumstances, the John Doe summons authorized by 26 U.S.C. § 7609(f) should not be thus limited or restricted. We agree with the IRS. The fact that the vast majority of the returns audited involved gifts of art or silver mining claims does not mean that the John Doe summons should be limited to ascertaining only the names of other donors of art and mining claims. The fact remains that of the 162 returns audited, including some that did not involve gifts of art or silver mining claims, in every instance the donor overvalued his contribution on his tax return.

Two recent cases which shed light on the present controversy are *In the Matter of the Tax Liability of John Does, Members of the Columbus Trade Exchange in the Years 1977 and 1978*, 671 F.2d 977 (6th Cir. 1982) and *United States v. Pittsburgh Trade Exchange, Inc.*, 644 F.2d 302 (3rd Cir. 1981). Both of these cases involved a "barter exchange," which operates as a clearing house for the exchange of goods and services,

---

**6.** In reports by the House Ways and Means Committee and the Senate Finance Committee on the Tax Reform Act of 1976, Pub.L.No.94–455, 90 Stat. 1520, formerly H.R.10612, the following explanation of subsection (f)(2) appears:

While the committee believes it is important to preserve the John Doe summons as an investigative tool which may be used in appropriate circumstances, at the same time, the committee does not intend that the John Doe summons is to be available for purposes of enabling the Service to engage in a possible "fishing expedition." For this reason, the committee intends that when the Service does seek court authorization to serve John Doe summons, it will have specific facts concerning a specific situation to present to the court.

On the other hand, the committee does not intend to impose an undue burden on the Service in connection with obtaining a court authorization to serve this type of summons.

For example, the Service is not required to show that there is "probable cause" (within the meaning of the criminal laws relating to the issuance of a search warrant) to believe that a criminal act has occurred, or even that civil fraud has occurred, or might be involved. It is enough for the Service to reveal to the court evidence that a transaction has occurred, and that the transaction (in the context of such facts as may be known to the Service at that time) is of such a nature as to be reasonably suggestive of the possibility that the correct tax liability with respect to that transaction may not have been reported (or might not be reported in the case of a current year transaction, with respect to which a return is not yet due) .... H.R.Rep. No.94–658, 94th Cong., 1st Sess. 311 (1975), *reprinted in* [1976] U.S.Code Cong. & Ad. News 2897, 2897; S.Rep.No.94–938, 94th Cong., 2d Sess. 373, *reprinted in* [1976] U.S. Code Cong. & Ad.News 2897, 3439.

other than for cash, between members of the exchange. In each case the IRS sought to serve a John Doe summons on a named barter exchange to obtain the names of the exchange's members, and the IRS alleged as its "reasonable basis for believing," under 7609(f)(2), that audits of tax returns of members of *other* barter exchanges had revealed a high incidence of improper reporting.

In *Columbus Trade Exchange*, the district court declined to authorize the service of the John Doe summons on the barter exchange there involved, finding that the IRS had failed to meet the requirement of 7609(f)(2). In reversing, the Sixth Circuit held that the district court interpreted the statutory standard set forth in 26 U.S.C. § 7609(f) "in too rigorous a manner." The Sixth Circuit analyzed the statute in the light of legislative history, and concluded that Congress did not intend to impose stringent restrictions on the Secretary's investigatory function, but sought only to prevent any "arbitrary or quixotic use" of the John Doe summons power. 671 F.2d at 980.

In *Pittsburgh Trade Exchange*, the Third Circuit upheld enforcement of a John Doe summons served on a barter exchange, relying upon testimony from IRS agents that prior audits of tax returns of members of other barter exchanges demonstrated that barter transactions are "inherently susceptible to tax errors." 644 F.2d 306.

We believe that these cases tend to support our conclusion that in the instant case the IRS had a reasonable basis for believing that some of the unidentified donors of contributions in kind to BYU may have failed to file proper tax returns. In our view, the IRS has made a stronger showing of reasonableness in the instant case than it did in either *Columbus Trade Exchange* or *Pittsburgh Trade Exchange*, where there had been no audit of any member of the particular exchange whose membership was sought, only an audit of members of other barter exchanges.

**7.** The number of unidentified donors is based on our understanding of the affidavit of Dallin H. Oaks, then president of BYU, which was

In sum, BYU, as a private institution of higher learning, is exempt from taxation under 26 U.S.C. § 501(c)(3). In line therewith, gifts to BYU are charitable contributions and as such, deductible from the donor's income. Such deduction, however, is limited to the fair market value of the gift. In the present case, BYU itself is not under investigation. All that the IRS seeks are the names of some 150 presently unidentified donors of charitable contributions in kind to BYU.[7] We conclude that having previously examined the returns of some 162 donors of gifts in kind to BYU and having found that all were overvalued, the IRS has established a reasonable basis for believing that *some* of the remaining donors of in kind gifts *may* have also overvalued their gifts. Such reasoning makes sense to us.

Judgment reversed and case remanded with direction that the district court order enforcement of the summons.

attached to BYU's memorandum in opposition to enforcement of the summons.