688 F.2d 144
 82-2 USTC P 9565
 In the Matter of the Tax Liabilities of John DOES,
Unidentified Clients and Customers Who Invested or
Participated in Dairy Cattle Programs Promoted by
Agricultural Asset Management Co., Inc., in the years 1978,
1979 and 1980.
AGRICULTURAL ASSET MANAGEMENT CO., INC., Appellant,
v.
UNITED STATES of America, and Arthur McDonald, Revenue
Agent, Internal Revenue Service, Appellees.
 No. 1468, Docket 82-6112.
 United States Court of Appeals,
Second Circuit.
 Argued July 15, 1982.
Decided Aug. 31, 1982.
 
 Kent T. Stauffer, New York City (Ellis L. Reemer, Mathew E. Hoffman, Gordon, Hurwitz, Butowsky, Baker, Weitzen & Shalov, New York City, on the brief), for appellant.
 William A. Whitledge, Dept. of Justice, Washington, D. C. (George H. Lowe, U. S. Atty., N. D. N. Y., Glenn L. Archer, Jr., Asst. Atty. Gen., Syracuse, N. Y., Michael L. Paup and Philip I. Brennan, Dept. of Justice, Washington, D. C., on the brief), for appellees.
 Before CARDAMONE and WINTER, Circuit Judges, and MALETZ, Judge, United States Court of International Trade.*
 MALETZ, Judge:
 
 
 1
 Appellant Agricultural Asset Management Co., Inc. (Ag Asset) appeals from a memorandum decision and order of the District Court for the Northern District of New York (Roger J. Miner, Judge ), enforcing an Internal Revenue Service John Doe summons.[1] It contends that the District Court erred in ruling that Ag Asset, as the summoned party, may not challenge enforcement on the grounds that the Government has failed to comply with the criteria set forth in 26 U.S.C. § 7609(f).[2]
 
 
 2
 We hold that the District Court, in a well-reasoned opinion, correctly ruled that the criteria in 26 U.S.C. § 7609(f) governing ex parte issuance of a John Doe summons pursuant to 26 U.S.C. § 7609(h)(1)[3] are not appropriate grounds to challenge enforcement of the summons. We therefore affirm its order enforcing the summons.
 
 
 3
 * Ag Asset is in the business of promoting and managing tax shelter programs which involve the financing or purchasing of dairy cattle herds. An investor in one of Ag Asset's programs provides a portion of the amount necessary to purchase the herd. Ag Asset then obtains the remainder of the funds from various lending institutions using notes secured by the herd.
 
 
 4
 Once the herd is purchased, it is leased to a farmer recruited by Ag Asset, who is responsible for its care and maintenance and bears the risk of its loss. The investor is entitled to a percentage of the milk receipts which are paid to Ag Asset as managing agent for the investor. Ag Asset in turn uses these funds to make the payments called for by the notes and to pay other expenses. At the end of the contract term, the parties may renew the contract, the farmer may purchase the herd for a specified price, or he may relinquish the herd to the investor. Under the program, each investor is considered to be the owner of the herd and therefore deducts those expenses and takes investment credits and a depreciation allowance which are normally available to the owner of a dairy herd.
 
 
 5
 The IRS, however, takes the position that the investor in tax programs such as Ag Asset's is not in reality the owner of the herd but simply finances its purchase. It therefore contends that the investor is not entitled to take the deductions and credits normally available to the owner of a dairy herd. In the alternative, the IRS claims that such deductions and credits are not allowable under the Internal Revenue Code for other reasons even if the investor is considered the owner of the herd.[4]
 
 
 6
 In this setting, on January 20, 1982, the Government commenced a proceeding pursuant to 26 U.S.C. §§ 7402[5] and 7609(f) and (h) by filing an ex parte petition in the District Court for leave to serve a John Doe summons on Ag Asset which would require it to produce the names, addresses and social security or employer identification numbers of all persons who were investors or participants in its dairy cattle programs during 1978, 1979 and 1980, and any records containing that information. Accompanying the petition was an affidavit of Internal Revenue Service Agent Arthur McDonald which attested to the following:
 
 
 7
 In the course of his duties Agent McDonald was assigned to investigate the extent to which investors in dairy cattle programs promoted by Ag Asset in the years 1978, 1979 and 1980 had incorrectly claimed income tax deductions and investment tax credits on their federal income tax returns in connection with their participation in those programs. In the course of his investigation, he examined the 1979 and 1980 income tax returns of 19 partnerships and 10 individuals who had invested in Ag Asset's tax shelter programs and found that in each case the investor improperly claimed deductions for depreciation and management fees and investment tax credits relating to their investment in the dairy herd program. Agent McDonald also learned that Ag Asset made representations in its prospectus and other company literature, and in interviews, that investors in the company would be entitled to the same deductions and credits as those taken in the 29 tax returns he examined.
 
 
 8
 According to McDonald's affidavit, that audit experience and the prospectus led him to conclude that a significant number of other Ag Asset investors also may have incorrectly reported their income, deductions and credits arising from their dairy herd investment. Hence, he determined that it was necessary to conduct audits of the estimated 350 investors in the dairy cattle programs sponsored by Ag Asset during the years 1978, 1979 and 1980. Since the names, addresses, social security or employer identification numbers of those persons were not known or available to McDonald or the IRS, Ag Asset was requested to provide that information-which it refused to do.
 
 
 9
 Against this background, the Government, as previously indicated, filed an ex parte petition and McDonald's supporting affidavit in the District Court on January 20, 1982 seeking leave to serve a John Doe summons on Ag Asset which would require it to produce the information. The petition also requested that Ag Asset be required to comply with the summons or, in the alternative, to show cause why it should not comply. On January 20, 1982, the District Court, after having determined that the Government had satisfied the three-pronged test of section 7609(f) for the issuance of a John Doe summons, entered an order permitting service of the summons.
 
 
 10
 Ag Asset, however, refused to comply with the summons. Instead, it submitted written objections and affidavits claiming the summons should not be enforced because the IRS had not satisfied the criteria of section 7609(f). At a hearing held on February 26, 1982, Ag Asset renewed this argument. The District Court rejected the argument, concluding that Ag Asset could not employ the section 7609(f) criteria to withstand enforcement of the summons. The court then determined that the Government had made a prima facie case for enforcement which Ag Asset had not rebutted and ordered the summons enforced.[6] This appeal followed.
 
 II
 
 11
 Section 7609(f), as noted, sets forth the showing Congress required the IRS to make in order to serve a John Doe summons, i.e., to establish to the satisfaction of the court that (1) the summons relates to the investigation of a particular person or group; (2) that there is a reasonable basis for believing that such person or group may fail or may have failed to comply with any internal revenue law; and (3) that the information cannot be readily obtained elsewhere. We consider now whether these criteria for issuance of a John Doe summons are appropriate grounds to challenge its enforcement.
 
 
 12
 In general, to obtain judicial enforcement of a summons, the Government is required, pursuant to the Supreme Court decision in United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), to make a prima facie showing that: (1) its investigation was being conducted for a legitimate purpose; (2) its inquiry may be relevant to that purpose; (3) the information sought is not already within the Government's possession; and (4) the administrative steps required by the Internal Revenue Code have been followed. Once that showing is made, the burden shifts to the summoned party who may challenge summons enforcement on any " 'appropriate ... ground,' " Powell, 379 U.S. at 58, 85 S.Ct. at 255 (quoting Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964)),[7] or otherwise prove that enforcement would constitute an abuse of the court's process,[8] id. See also United States v. Chase Manhattan Bank, 598 F.2d 321, 323 (2d Cir. 1979); United States v. Chemical Bank, 593 F.2d 451, 454 (2d Cir. 1979); United States v. Marine Midland Bank of N. Y., 585 F.2d 36, 38 (2d Cir. 1978); United States v. Morgan Guaranty Trust Co., 572 F.2d 36 (2d Cir.), cert. denied sub nom. Keech v. United States, 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978).
 
 
 13
 Prior to enactment of the Tax Reform Act of 1976, the only restraint on the issuance of a John Doe summons was self-imposed by the Commissioner of Internal Revenue. This practice was approved by the Supreme Court in United States v. Bisceglia, 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975), which held that the IRS had authority under sections 7601 and 7602 of the Internal Revenue Code to issue John Doe summonses subject to the limitation that the Powell criteria would be applicable if enforcement of the summons was challenged. The holding in Bisceglia led to concern in Congress that the use of John Doe summonses might become widespread and uncontrolled. What is more, Congress did not consider the IRS' administrative policy of "high level" supervision and "advance supervisory control" over John Doe summonses sufficient safeguards to protect the taxpayer's right to privacy. Given that situation, Congress enacted sections 7609(f) and (h) as part of the Tax Reform Act of 1976, Pub.L.No.94-455, 90 Stat. 1520, 1699, sec. 1205(a). See H.R.Rep.No. 94-658, 94th Cong., 1st Sess. 307, reprinted in 1976 U.S.Code Cong. & Ad.News 3203; S.Rep.No. 94-938, 94th Cong., 2d Sess. 368, reprinted in 1976 U.S.Code Cong. & Ad.News 2897, 3797-8.
 
 
 14
 Aware that "it is important to preserve the John Doe summons as an investigative tool," H.R.Rep.No. 94-658 at 311, the Congress nonetheless sought to provide some restraint on the power to issue John Doe summonses while at the same time not "intending to impose an undue burden on the Service in connection with obtaining a court authorization to serve this type of summons." Id. This was done by requiring independent review by a district court to determine whether use of a John Doe summons was warranted.
 
 
 15
 Section 7609(f) sets forth the showing Congress required the IRS to make in order to serve a John Doe summons. Section 7609(h), in turn, grants jurisdiction to the appropriate district court to determine proceedings brought under subsection (f) and mandates that such determinations "shall be made ex parte and shall be made solely upon the petition and supporting affidavit." (Emphasis added.) By requiring that the application be made to the court ex parte, we believe Congress intended that the question whether a John Doe summons could be served should not become embroiled in an adversary proceeding. Nothing in the legislative history or on the face of the statute suggests that Congress intended to permit a summoned party to challenge the showings which are a requisite for service of a summons. Were this the case, the enforcement proceedings would, contrary to the legislative intent, "so delay tax investigations by the (Internal Revenue) Service that they (would) produce a problem for sound tax administration greater than the one they seek to solve." S.Rep.No. 94-938 at 371, U.S.Code Cong. & Admin.News 1976 at 3800. See also Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). Moreover, permitting a reopening of the section 7609(f) determination in an enforcement proceeding would make the prior ex parte proceeding superfluous. For if a summoned party may challenge the section 7609(f) criteria in an adversary proceeding, there would be no need for an ex parte hearing to make that same determination. Had Congress so intended, we think it would have provided for notice and an adversary hearing at the time of application to the district court.
 
 
 16
 In short, Congress in enacting section 7609(f) and (h) was concerned only with providing a prior restraint on the power to serve John Doe summonses in order to preclude the IRS from using such summonses to engage in possible "fishing expeditions." H.R.Rep.No. 94-658 at 311. See Matter of Oil and Gas Producers, Etc., 500 F.Supp. 440 (W.D.Okl.1980). Moreover, the legislative history emphasizes that "the purpose of this procedure is to facilitate the opportunity of the noticee to raise defenses which are already available under law ... and ... these provisions are not intended to expand the substantive rights of these parties." S.Rep.No. 94-938 at 370, U.S.Code Cong. & Admin.News 1976 at 3800. (Emphasis added.) Given this expression of Congressional intent, we think it clear that section 7609(f) does not enlarge or contract the substantive rights to enforcement already available to the taxpayer. See United States v. Pittsburgh Trade Exchange, 644 F.2d 302, 306 (3d Cir. 1981).
 
 
 17
 We are mindful that contrary to the result we reach here, the Tenth Circuit has recently held that in order to prevent abuse of the court's process, the summoned party may, in an enforcement proceeding, challenge the section 7609(f) (2) determination that there is a "reasonable basis for believing" there may be a violation of an internal revenue law. United States v. Brigham Young University, 679 F.2d 1345 (1982). The basis of the decision is that section 7609(f) does not "render inapplicable the principles set forth in such cases as Reisman and Powell." Id. at 1348.[9] But it does not follow that denying the taxpayer the right to challenge the section 7609(f) criteria in the enforcement proceedings precludes him from relying on the four Powell standards and claiming bad faith or abuse of court process. All these substantive rights continue to be available.[10]
 
 
 18
 Finally, we agree with the District Court that the Government has met the four-part test of Powell for enforcement and that Ag Asset has not presented "a scintilla of evidence demonstrating governmental bad faith in its investigation" or otherwise proved that enforcement would constitute an abuse of the court's process.[11]
 
 III
 
 19
 The order appealed from requiring Ag Asset to produce the names, addresses and social security or employer identification numbers of all persons who were investors or participants in its dairy cattle programs during 1978, 1979 and 1980, and all records containing that information, is affirmed.
 
 
 
 *
 Sitting by designation
 
 
 [1]
 "A 'John Doe' summons is, in essence, a direction to a third party to surrender information concerning taxpayers whose identity is currently unknown to the IRS." Matter of Does, 671 F.2d 977, 978 (6th Cir. 1982)
 
 
 [2]
 Section 7609(f) provides:
 Additional requirement in the case of a John Doe summons
 Any summons described in subsection (c) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that-
 (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
 (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
 (3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.
 
 
 [3]
 Section 7609(h)(1) provides:
 Jurisdiction of district court
 (1) The United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine proceedings brought under subsections (f) or (g). The determinations required to be made under subsections (f) and (g) shall be made ex parte and shall be made solely upon the petition and supporting affidavits. An order denying the petition shall be deemed a final order which may be appealed.
 
 
 [4]
 Thus, the IRS asserts that the investor is not entitled to deductions for (1) depreciation because the herd is not losing its usefulness or value since the farmer must replace any cow which dies or ceases to give milk, or (2) management fees because they are in excess of normal management fees for the profession and that the excess fees constitute start-up expenses which are not deductible. In addition, the IRS takes the position, based on Treasury Reg. § 1.48-3(a)(2)(i), that the investor does not qualify for the investment credit since the herd is "used" by the same party after the investor acquires it
 
 
 [5]
 Section 7402 provides in part:
 Jurisdiction of district courts
 (a) To issue orders, processes, and judgments
 The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of ne exeat republica, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.
 (b) To enforce summons
 If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.
 
 
 [6]
 The order was stayed pending determination of this appeal
 
 
 [7]
 "This would include ... the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution ... as well as that it is protected by the attorney-client privilege." Reisman, 375 U.S. at 449, 84 S.Ct. at 513
 
 
 [8]
 "Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." Powell, 379 U.S. at 58, 85 S.Ct. at 255
 
 
 [9]
 In United States v. Island Trade Exchange, 535 F.Supp. 993 (E.D.N.Y.1982), the District Court held, for similar reasons, that a summoned party is free to challenge the IRS showing that the statutory requirements of section 7609(f) have been met, accord United States v. Maxwell, 81-1 USTC 87,025 (D.Nev.1981). Contra United States v. Hayes, 81-2 USTC 88,084 (N.D.Ga.1981). See also In re Purchasers of Master Recordings from Bowman Recording & Prod. Co., 80-1 USTC 84,230 (N.D.Ga.1980)
 
 
 [10]
 To support its holding that section 7609(f) is an appropriate ground on which to challenge a summons, the Tenth Circuit relied on the Third Circuit decision in Pittsburgh Trade Exchange, 644 F.2d 302. However, there the court held that the mere fact that section 7609(h) required judicial approval of the decision to serve a John Doe summons did not deprive the summoned party of a right to contest that summons in an enforcement proceeding. Additionally, the court concluded that since the Government met the requirements of section 7609(f), it was unnecessary to decide whether that section substantively modified section 7602. Id. at 306. Even so, the court observed in dictum that section 7609(f) "did not enlarge the substantive grounds on which a taxpayer could resist enforcement," but merely provided "an additional procedural safeguard ... neither adding to nor subtracting from the scope of section 7602." Id
 
 
 [11]
 Ag Asset's contention that the summons is vague, ambiguous and overbroad is without merit