**UNITED STATES of America and Allen Roniss, Chief, Employee Plans, Chicago District of the Internal Revenue Service, Appellees,**

v.

**JOHN G. MUTSCHLER & ASSOCIATES, INC., Appellant.**

**Actuarial and Benefits Consultants, Inc.**

**No. 84–5009.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1984.

Decided May 8, 1984.

Henson & Efron, P.A., Stanley Efron, Stephen L. Hopkins, Sarah McKenzie, Minneapolis, Minn., for appellant.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Charles E. Brookhart, William A. Whitledge, Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellees; James M. Rosenbaum, U.S. Atty., Minneapolis, Minn., of counsel.

Before LAY, Chief Judge, and HEANEY and BOWMAN, Circuit Judges.

HEANEY, Circuit Judge.

■ John Mutschler and Associates, Inc. (JMA), appeals from a district court[1] order enforcing a third-party, John Doe summons issued by the Internal Revenue Service (IRS). We agree with the district court that JMA's opposition to the enforcement of the summons should be governed by the criteria set forth in *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964), and that the IRS met those criteria in the instant case. We therefore affirm.

JMA is a deferred benefit service organization which provides assistance to clients wishing to create and operate employee pension or retirement plans. It designs and submits deferred benefit plans to the IRS on behalf of its clients for opinion letters regarding the plans' compatibility with the Internal Revenue Code (Code). It assists in the administration of employee plans and trusts. It also prepares for its clients employee trust financial statements, annual IRS information returns (Form 5500 series returns), and related employee benefit plan returns.

In 1982, after reviewing several tax returns filed by known clients of JMA and noticing inaccuracies in those returns, the IRS decided to investigate further to determine if a pattern of such inaccuracies extended to other JMA clients. The IRS prepared a third-party, John Doe summons to be served on JMA and two companies which were involved in the same field and were arguably connected with JMA or JMA personnel—Retirement Data Services, Inc. (RDS), and Actuarial Benefits Consultants, Inc. (ABC). The summons in essence requested each of the named parties to provide the IRS with a list of the clients which

---

1. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

it assisted in the preparation of Forms 5500 for tax periods commencing after June 30, 1979, until the date of the summons, and all retained copies of such forms for the same period.

Prior to serving this type of summons, the Code requires the IRS to obtain court approval. Section 7609(f) provides:

Any summons described in subsection (c) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that—

(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

26 U.S.C. § 7609(f) (1982).

The Code further provides that the requisite determinations under section 7609(f) "shall be made ex parte and shall be made solely on the petition and supporting affidavits." *Id.* § 7609(h)(2).

Pursuant to these provisions, the IRS submitted its petition to serve the instant summons and the affidavit of Martin Heffron, Group Manager of the Employee Plan/Exempt Organization Division of the IRS in the St. Paul District, to the United States District Court for the District of Minnesota. *See id.* § 7609(h)(1). On January 11, 1983, Judge Robert G. Renner granted leave to serve the summons, which was dated December 30, 1982. JMA moved to set aside the order and quash the summons. On the report and recommendation of a magistrate, Judge Renner denied this motion on April 13, 1983. JMA refused to comply with the summons.

The IRS thereafter instituted the present action to enforce the summons. A hearing was held before United States Magistrate Brian P. Short on September 6, 1983. JMA opposed enforcement first because the IRS affidavit submitted to support service of the summons allegedly contained erroneous and misleading information which skewed the "reasonable basis" determination required by section 7609(f)(2). In support of this claim, JMA submitted a counteraffidavit asserting that the change rate on returns of JMA clients examined by the IRS up to that time was fifty percent, instead of the eighty-eight percent referred to in the Heffron affidavit. JMA also opposed enforcement on the ground that the IRS already possessed sufficient documentation to ascertain the names requested in the summons, contrary to the section 7609(f)(3) requirement that the requested information not be "readily available from other sources" and to the general requirement in IRS summons enforcement proceedings that the "information sought [not be] already within the Commissioner's possession," *United States v. Powell, supra,* 379 U.S. at 58, 85 S.Ct. at 255.

Immediately following the September 6 hearing the magistrate issued his findings and recommendations from the bench. He recommended that the court not reconsider the sufficiency of the petition or affidavit underlying the section 7609(f) and (h)(2) ex parte grant to serve the summons. He recommended denying enforcement of the summons, however, because he believed that the IRS could retrieve the names of JMA clients for the relevant period with a computer match-up of the approximately 18,000 applications for IRS opinion letters filed by benefit plan taxpayers during this period and the powers of attorney, naming plan consultants such as JMA, which were normally attached to such applications. He felt that the IRS therefore had possession of the information sought and could not request its production by summons consistent with the decision in *Powell.*

The district court adopted the magistrate's recommendation regarding reconsideration of the section 7609(f) criteria, hold-

ing that an attack on the affidavit establishing those elements at a summons enforcement proceeding would improperly circumvent the ex parte nature of the section 7609(h)(2) hearing prior to service of the summons. The court thus held that section 7609(f) did not expand the protections available to those opposing the enforcement of an IRS summons beyond those recognized in *Powell.* The court disagreed with the magistrate, however, regarding the ability of the IRS to obtain the requested information independent of the summons. The court made a de novo review of the hearing testimony and found that no computer match-up existed for the period at issue which could lead the IRS from the 18,000 opinion letter applications to the much smaller number of applications accompanied by powers of attorney in favor of JMA; rather, a manual search of the 18,000 applications would have to be conducted. The court found that requiring the IRS to make such a manual search would be unreasonable and that the information therefore was not "readily obtainable." It thus held that the IRS issued and served the summons in good faith under the *Powell* criteria, and granted the petition to enforce the summons. JMA appeals raising the identical issues passed upon below.

■ We agree with the magistrate and district court that the criteria for the service of a third-party, John Doe summons under section 7609(f) cannot be collaterally challenged during proceedings to enforce the summons. First, section 7609(h)(2) specifically provides that the 7609(f) determinations should be made ex parte and solely on the petition and affidavits of the IRS. Section 7609(h)(1) further provides that only an order *denying* such a petition is a final order which may be appealed, 26 U.S.C. § 7609(h)(1) (1982), affirming that the IRS is the only party to a section 7609(h)(2) proceeding. Allowing reconsideration of the section 7609(f) determinations during a summons enforcement action would subject those determinations to adversarial attacks inconsistent with the ex parte nature of the proceedings expressly created by Congress.

In addition, the legislative history to section 7609 nowhere indicates that the section 7609(f) determinations may be reconsidered in summons enforcement proceedings. The report of the House Ways and Means Committee on this statute noted that the restrictions on the use of a third-party, John Doe summons were meant to prevent "fishing expedition[s]" by the IRS, but it emphasized that section 7609(f) did not place anything akin to a "probable cause" standard on the issuance or service of such a summons. H.R.Rep. No. 94–658, 94th Cong., 2d Sess. 311, *reprinted in* 1976 U.S.Code Cong. & Ad.News 2897, 3207; *accord* S.Rep. No. 94–938, 94th Cong., 2d Sess. 373, *reprinted in* 1976 U.S.Code Cong. & Ad.News 3439, 3802. When read in context, the legislative history demonstrates that the section 7609(h)(2) proceeding to establish the section 7609(f) criteria was designed as an added protection for taxpayers in the John Doe summons situation, where notice to target taxpayers by the IRS prior to third-party compliance with the summons was not possible. *See* H.R. Rep. No. 94–658, *supra,* at 307–311, *reprinted in* 1976 U.S.Code Cong. & Ad. News at 3203–3207; S.Rep. No. 94–938, *supra,* at 368–373, *reprinted in* 1976 U.S. Code Cong. & Ad.News at 3797–3803. We decline to surmise that Congress intended this added measure of prior protection for unknown taxpayers to also create greater rights for a third-party recordkeeper served with a John Doe summons instead of a summons listing the names of target taxpayers.

Finally, case precedent supports the interpretation of section 7609(f) and (h)(2) adopted below. Both the Ninth and Second Circuits have squarely addressed the question whether a district court should reconsider the section 7609(f) criteria during summons enforcement proceedings, and both decided that such reconsideration would be contrary to the intent of Congress. *United States v. Samuels, Kramer & Co.,* 712 F.2d 1342, 1346 (9th Cir.1983); *Agricultural Asset Management Co. v. United States,* 688 F.2d 144, 148 (2d Cir.

1982). *Cf. United States v. Pittsburgh Trade Exchange, Inc.*, 644 F.2d 302, 304–306 (3d Cir.1981) (section 7609(h)(2) ex parte hearing does not prevent a third-party recordkeeper from contesting a John Doe summons at the enforcement stage; the court does not reach the question of reconsideration of the section 7609(f) criteria during enforcement proceedings, however). ·We see no reason to depart from the express holdings on this matter by our sister circuits.

■■■ Of course, nothing in our decision restricts the scope of review during summons enforcement proceedings established in *Powell*. The IRS must make out a prima facie case of good faith establishing "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed." *United States v. Powell, supra,* 379 U.S. at 57–58, 85 S.Ct. at 254–255. Besides these four specific prima facie elements, the *Powell* Court made clear that a court asked to enforce an IRS summons may "inquire into the underlying reasons for the examination" in order to prevent an abuse of the judicial process. *Id.* at 58, 85 S.Ct. at 255. Once the IRS makes out a prima facie case under the four express *Powell* standards, the burden shifts to the party summoned "to disprove one of these elements or to demonstrate that judicial enforcement of the summons would otherwise constitute an abuse of the court's process." *United States v. Lask,* 703 F.2d 293, 297 (8th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 104, 78 L.Ed.2d 107 (1983).

■■ ■ Therefore, JMA may point to discrepancies in the Heffron affidavit used to obtain judicial leave to serve the summons not to disprove the existence of any of the section 7609(f) criteria, but rather to attempt to show that the IRS did not have a legitimate purpose, was abusing the court's process, or did not meet any of the other requirements of *Powell*. *See United States v. Samuels, Kramer & Co., supra,* 712 F.2d at 1346; *Agricultural Asset Management Co. v. United States, supra,* 688 F.2d at 149. We agree with the district court that JMA failed to overcome the IRS's unquestioned prima facie case of good faith in this manner. The discrepancies claimed with regard to the Heffron affidavit were more differences in interpretation than differences in factual assertion. Heffron declared in the affidavit that the change rate discovered from an examination of Form 5500 series returns prepared by JMA or RDS was eighty-eight percent insofar as those examinations had been completed; JMA submitted its counteraffidavit asserting a change rate on JMA-prepared returns in this category of only fifty percent. Heffron testified before the magistrate that this difference could be attributed to the combining of the statistics of JMA, RDS, or ABC for investigative purposes, or to JMA's failure to include in its calculations clients which were no longer associated with that company. In addition, even accepting JMA's assertion of the proper change rate, we think such a rate sufficient to merit further investigation by the IRS.[2]

■ JMA's final assault on the instant summons under the *Powell* standards is its assertion that the IRS already possessed the information sought. The district court followed case precedent which declined to apply a literal interpretation of this *Powell*

---

**2.** JMA cited a 1982 IRS report indicating that the change rate for all returns examined by the IRS for that year was 81.3%. From this, JMA asserts that the change rate for JMA clients claimed by Heffron was not unusual, and the rate which JMA thought accurate was exemplary. This argument ignores that the 81.3% figure apparently reflects only returns subject to audit or special examination by the IRS, not the total universe of filed returns. The statistics thus may be read to support the accuracy of IRS suspicions leading to further investigations in most cases. Furthermore, we do not think that alleged inaccuracies· in the returns of others should provide a shield against IRS investigation of suspected inaccuracies in the returns of JMA clients.

criterion in favor of a practical approach to IRS accessibility. *See, e.g., United States v. Kis,* 658 F.2d 526, 538 (7th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982); *United States v. Davis,* 636 F.2d 1028, 1037–1038 (5th Cir.), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981); *United States v. First National State Bank,* 616 F.2d 668, 674 (3d Cir.), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980). We agree, and hold on the facts as found by the district court that the IRS did not already possess the information sought under this standard. The manual search of 18,000 opinion letter applications to find clients which granted JMA a power of attorney along with those applications would be an unreasonable and imprecise method of reaching the desired goal. Besides the human error inherent in such a process, the record does not establish that all of the information sought in the summons could be retrieved through this method. Heffron testified that JMA normally attached powers of attorney to the applications it submitted on behalf of its clients, but there could be exceptions to this norm or Heffron's personal knowledge on this matter could be incomplete. Moreover, the manual search apparently would not reveal JMA clients who had others submit their applications for opinion letters even though JMA later might have prepared their Form 5500 series returns.

In sum, we find no bad faith on the part of the IRS in the course of this investigation. We therefore affirm the district court's order enforcing the summons against JMA.